# Exhibit B

1

1          THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF ALABAMA

3                  SOUTHERN DIVISION

4

5    CLAUDIA BALCERO GIRALDO,

6    et al.

7              Plaintiffs

8    vs.                    Case No. 2:09-cv-1041-RDP

9    DRUMMOND COMPANY, INC.,

10   et al.

11             Defendants

12   _____/

13

14

15             The Letters Rogatory Video Hearing in the

16   above-titled matter, as translated by Guiomar Emedan-

17   Lauten and Maria Kisic, Interpreters, was held on

18   Monday, March 12, 2012, commencing at 9:10 a.m., at

19   the Third Circuit Criminal Court of Valledupar,

20   Colombia, before the Honorable Judge Alfonso Tatis and

21   Steven Poulakos, Notary Public.

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Vol. 1
March 12, 2012

---

Page 6

1   it was private, that this proceeding would be only for
2   the parties and for the personnel that are necessary.
3       THE COURT: What do Plaintiffs say?  What
4   does the other party say?
5       MR. COLLINGSWORTH: We have no objection to
6   this being an open proceeding, Your Honor.
7       THE COURT: We will not accept it because
8   the gentleman is undertaking the duties of a legal
9   profession and he has a duty to inform the citizens.
10  So we will let him remain.
11      MR. JEFFRESS: Very well.
12      THE COURT: As agreed first we will have
13  instructions from Plaintiff and then from the other
14  party.  So, please, begin introducing each of counsel.
15      MR. COLLINGSWORTH: Good morning, Your
16  Honor.  My name is Terry Collingsworth and I'm counsel
17  for the Plaintiffs in this matter.  I wanted to thank
18  you for your flexibility in letting us invade your
19  courtroom and we're going to do our best to make this
20  an efficient procedure.
21      With me I have Lorraine Leete who is my

---

Page 7

1   co-counsel and Francisco Ramirez Cuellar who is my
2   co-counsel.
3       THE COURT: Could Defendants, please, state
4   their names for the record, those that are accredited
5   to -- for part of these proceedings.
6       MR. PALOMINO: Gregorio Alvear Palomino.
7       MR. JEFFRESS: William Jeffress for the
8   Defendants.
9       MR. DAVIS: I'm Tony Davis for the
10  Defendants.
11      MR. PARR: Bryan Parr for the
12  Defendants.
13      MR. LINARES: Jose Linares.
14      THE COURT: Thank you.
15      As and in compliance with the legal
16  assistance for international proceedings and as we
17  have agreed we will follow the following order of
18  proceedings:  Initially Plaintiff will be
19  interrogating the witness and then we will afford an
20  opportunity for cross to the Defendants.  Initially
21  we will swear in the witness.

---

Page 8

1   Whereupon,
2   ALCIDES MANUEL MATTOS TABARES, alias SAMARIO,
3   called as a witness, having been first duly sworn to
4   tell the truth, the whole truth and nothing but the
5   truth, was examined and testified as follows:
6       THE COURT: But since we are swearing in
7   this witness and since these depositions are taking
8   place here in Colombia I believe it is fitting to
9   provide the due warnings for testimony that we normally
10  would use here in this country.
11      But according to our legislation anyone
12  testifying before Court and is sworn to say the
13  truth in any judicial proceeding you are not
14  compelled to testify against yourself, against your
15  spouse, against anyone related to you until the
16  fourth generation.
17      And if you are sworn to say the truth
18  before the competent authorities and you do not,
19  this conveys a penalty of 6 to 12 years of jail
20  time.
21      Considering the above do you swear to

---

Page 9

1   say the truth and only the truth?
2       THE WITNESS: Yes, I do.
3       THE COURT: So we now afford this space to
4   plaintiff if they would like to interrogate the
5   witness.
6       MR. COLLINGSWORTH: Thank you, Your Honor.
7   We'll begin.  Our videographer needs to read a
8   paragraph that formalizes the proceedings for our
9   court.
10      THE COURT: Perfect.
11      THE VIDEOGRAPHER: We're now on the
12  record in the matter of Claudia Balcero Giraldo,
13  et al., versus Drummond Company, Incorporated,
14  et al., in the United States District Court for the
15  Northern District of Alabama, Southern Division,
16  Case Number 2:09-cv-1041-RDP.  Today's date is March
17  12th, 2012.  The time is approximately 9:14 a.m.
18      This is the video-recorded deposition of
19  Alcides Manuel Mattos Tabares being taken at the
20  Third Circuit Court of Valledupar, Colombia.
21      My name is John Sherman here on behalf

---

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Vol. 1
March 12, 2012

---

Page 22

1    MR. COLLINGSWORTH: I would move to admit
2  into evidence this document which we have marked
3  Plaintiffs' Exhibit 1 which Mr. Mattos has identified.
4    (Plaintiffs' Exhibit 1 was marked for
5  purposes of identification.)
6    MR. JEFFRESS: Objection.
7    MR. COLLINGSWORTH: And what's your
8  objection?
9    MR. JEFFRESS: No foundation of personal
10  knowledge, hearsay, no authentication of the document.
11    THE COURT: But I think that that has to
12  maybe referenced to Letters Rogatory that the witness
13  has to be heard.  And according to such Letters
14  Rogatory, the examination is to be done in accordance
15  with jurisdictional law of the country of Colombia.
16    And according to that document there has
17  been -- the examination of how such questions are to
18  be posed in accordance with the Letters Rogatory and
19  with the international legal assistance.
20    So even if that has been the case and
21  those questions have been posed and are in

---

Page 23

1  accordance with the jurisdiction of the authorities
2  that allow for that posing of the questions we
3  cannot go beyond that screening in our own
4  jurisdiction.  Those Letters Rogatory do not ask of
5  us any more than to swear to witness.  However, this
6  Court does consider that.
7    According to what it implies, that --
8  those Rogatory Letters, the trial will take place in
9  August and, therefore -- and then in that procedure
10  then they will be able to present any type of
11  evidence, exclude evidence, or do anything pertinent
12  that is in accordance with such jurisdiction.
13    Therefore, this Court believes that any
14  type of objections that is done to any questioning
15  posed to the witness are within the scope of the
16  jurisdiction that is asking such questions; and they
17  do not represent any foundational objections in
18  accordance to this Court.  Unless the question is
19  superfluous, is misleading, it's not clear, and
20  other types of questions that are not well posed.
21    And any type of other procedure, legal procedure

---

Page 24

1  that the witness had to undergo have already been
2  done.
3    Therefore, any objection is to be posed
4  and set forth within any type of procedure that will
5  be done in the United States.  And the witness must
6  answer it, please.
7    MR. COLLINGSWORTH: Thank you, Your Honor.
8  That's fine.  We are just making our record and we'll
9  move on.
10    MR. JEFFRESS: If the Court please, if I
11  understand the Court's ruling, although I must make
12  objections in order to present them to the Court of the
13  United States.
14    THE COURT: With all due respect, yes, I
15  admit for you and accept for you to do your objections.
16  However, I will not resolve them for you.
17    MR. JEFFRESS: I understand.
18    THE COURT: Even though the faculty within
19  those Letters Rogatory have not been set forth, such
20  faculty for me to resolve them.  Therefore, it is very
21  clear and described therein that you can pose such

---

Page 25

1  objections.  And there will be a record of them so they
2  can be resolved by a competent jurisdiction in the
3  United States.
4    MR. JEFFRESS: Very good.  Thank you, Your
5  Honor.
6    MR. COLLINGSWORTH: If I may might add, and
7  then we'll move on, Counsel and I have agreed that we
8  reserve all objections to make later so that we can
9  continue with the proceedings without interpreting
10  objections.
11    THE COURT: We agree.
12    BY MR. COLLINGSWORTH:
13  Q  Mr. Mattos, can I ask you again to look at
14  pages 78 to 84 which you have reviewed?  And is that
15  what you just reviewed?
16  A  Yes.
17  Q  Is everything in that statement true?
18  A  Yes, of course.
19  Q  Thank you.
20    Mr. Mattos, we'll put the document aside
21  for now.  I want to ask you some other questions.

---

1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF ALABAMA

3                  (Southern Division)

4

5    CLAUDIA BALCERO GIRALDO,

6    et al.

7              Plaintiffs

8    vs.                    Case No. 2:09-cv-1041-RDP

9    DRUMMOND COMPANY, INC.,

10   et al.

11             Defendants

12   _____/

13

14          The Letters Rogatory Video Hearing in the

15   above-entitled matter, as translated by GUIOMAR EMEDAN-

16   LAUTEN and MARIA KISIC, INTERPRETERS, was held on

17   Friday, March 16, 2012, commencing at 9:03 a.m., at the

18   Seventh Civil Circuit Court of Bogota, Colombia, before

19   the Honorable Sergio Ivan Mesa Macias and Steven

20   Poulakos, Notary Public.

21   REPORTED BY:  Steven Poulakos

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing
March 16, 2012

---

Page 6

1    MR. JEFFRESS: I'm Bill Jeffress for the
2  Defendants in the case, and with me is Tony Davis,
3  Brian Parr, and Santiago Calvo, Jose Mijuel Linares
4  from Drummond Company is also present.
5    (Ms. Fonseca enters the room.)
6    THE COURT: We are going to take her
7  information and then begin.  So we are here today in
8  this 7th Circuit Court in Bogota with the object of
9  taking down the sworn testimony of Jose Del Carmen
10  Gelvez Alvarracin, a Colombian citizen, who is present
11  and under oath with the following clarification and
12  exception for these cases, which is that no one is
13  obliged to testify against himself, against his spouse,
14  or against his relatives up to the fourth level of
15  relationship.
16    This oath should be taken and will be
17  taken with the clarification that each question
18  where he may implicate himself criminally will not
19  be operative.  Thus the answer will either you can
20  answer, but it will be understood that you are no
21  longer under oath, or you can remain silent,

---

Page 7

1  whichever one you prefer.
2    So under those conditions I will now
3  swear him in and he has dually been sworn in.
4  Whereupon,
5    JOSE DEL CARMEN GELVEZ ALVARRACIN,
6  called as a witness, having been first duly sworn to
7  tell the truth, the whole truth and nothing but the
8  truth, was examined and testified as follows:
9    THE CLERK: Where are you from?
10    THE WITNESS: From Salento Quindio.
11    THE CLERK: Civil status?
12    THE WITNESS: Married, age 46.
13    THE CLERK: How far did you go in
14  school?
15    THE WITNESS: High school.
16    THE CLERK: Profession?
17    THE WITNESS: Social scientist.
18    THE CLERK: Address?
19    THE WITNESS: La Picota Penitentiary, cell
20  block 12, B hall, Justice and Peace cell.  I am
21  currently a member of the Justice and Peace process as

---

Page 8

1  a member, ex-member of the AUC where I belong to the
2  Northern Bloc, to the Tairona Resistence Front.  I
3  demobilized February 6, 2006.
4    THE COURT: So in compliance with the
5  Rogatory Letters, we have been requested to allow
6  Plaintiff to ask questions and we, please, ask that the
7  questions be asked very slowly because we need to take
8  a record of everything that is being said it will be
9  transcribed.
10    Likewise for the answers we ask that
11  they be given slowly for the record, and then the
12  second part of the process will entail giving the
13  Defendants the floor so that they can proceed with
14  the counter Interrogatory.
15    Since this is a case that belongs to
16  another jurisdiction, I will make no interventions
17  unless there is a question of law.
18    So Plaintiff has the floor.
19    MR. COLLINGSWORTH: Thank you, Your Honor.
20  I would like to thank you for your flexibility in
21  allowing this proceeding to occur here today.  And I

---

Page 9

1  will just note for the record that counsel for the
2  Defendants, Mr. Jeffress, and I will agreed to reserve
3  all objections for resolution by the Court in the
4  federal court in the United States except that if we
5  have an objection to the form of a question we will
6  state it for the record but we will not be asking Your
7  Honor to resolve any of those disputes today.
8    THE COURT: Okay.
9    THE WITNESS: Could we please identify --
10  could everybody who is in the room, please, identify
11  themselves.
12    THE COURT: So we have two sides that are
13  being represented and the rest are additional
14  personnel.
15    MR. COLLINGSWORTH: I will identify
16  everyone on my team.  I am Terry Collingsworth.  I
17  representative the Plaintiffs in the litigation.  This
18  is Lorraine Leete, my associate, and this is Yina Baeza
19  who is with my office.
20    These are the official translators, and
21  perhaps you could identify yourselves for him.

---

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing
March 16, 2012

Page 14

1  document that I've marked as Exhibit~1, and for
2  identification purposes the entire document is numbered
3  in the lower right-hand corner from 2797 to 2806 and it
4  is a English version translation with your original
5  Spanish version of a statement that you gave.
6     I'm going to hand it to you and I'd like
7  you to look at the Spanish portion. I would like to
8  you just focus on the Spanish portion of this, and it
9  is on pages 2802 to 2806. Can you find that? Let me
10  clarify.
11     Beginning with the Spanish portion I would
12  like you to, please, take your time and review this and
13  tell me if that is your statement.
14  A  (Witness reviewing document.)
15     THE INTERPRETER: For the judge's clerk is
16  taking a record also in Spanish. So the interpret is
17  going to have to slow down sometimes, even have to
18  repeat in midcourse for her to be able to take her
19  record. So whatever I do that seems repetitive it is
20  for the clerk of court.
21     MR. COLLINGSWORTH: Thank you. No problem.

Page 15

1     THE COURT: So if this is going to be part
2  of the official record, you have to give me a reference
3  as to what it is that the document implies.
4     THE CLERK: We are just receiving a copy
5  of?
6     MR. COLLINGSWORTH: Plaintiff's Exhibit~1.
7     THE INTERPRETER: Counsel, the question
8  pending was: Can you review this document?
9     MR. COLLINGSWORTH: I'm asking him to
10  review the document to determine whether it is the
11  statement that he provided.
12     If you could make clear to the witness
13  that I am not going to ask him questions about
14  substance. I'm merely asking him now to review it
15  so he can tell me if it's same statement that he had
16  previously given to me.
17     THE WITNESS: Yes, it is the document that
18  I have in front of me. I, however, have not finished
19  reading it all; but in simple -- by simple view it is
20  the document that I signed and that I put my own
21  fingerprint and I'm showing it to the camera.

Page 16

1     BY MR. COLLINGSWORTH:
2  Q  If you would like to finish reading it
3  carefully that's fine too. That's completely up to
4  you.
5     THE WITNESS: No, I ask to go to this page.
6     BY MR. COLLINGSWORTH:
7  Q  So on the last page of the document, sir,
8  that is your signature and your thumb print, correct?
9  A  Correct.
10  Q  And it is dated November 21st, 2011,
11  correct?
12  A  Si.
13  Q  Mr. Gelvez, the statement that I provided
14  that you've identified as the one that you gave me, is
15  everything in it true and accurate?
16     MR. JEFFRESS: Objection to form.
17     THE WITNESS: Yes.
18     THE CLERK: Did he answer yes?
19     THE WITNESS: Yes, sir.
20     MR. COLLINGSWORTH: Your Honor, I'm
21  wondering, this I would at least throw out there that

Page 17

1  we could provide you with -- we could -- we are taking
2  a complete transcript of the proceedings. We could
3  provide you with an official translation of these
4  proceedings and we could probably move this along a lot
5  faster, if that's all right with you.
6     THE COURT: However, we could not sign a
7  proceeding that is being made in English and that would
8  be just for purposes of record though. So we would
9  need an immediate Spanish translation. If we could do
10  it in a Spanish transcription, fine, we can sign it,
11  but if we have to do it slowly like this.
12     MR. COLLINGSWORTH: Well, if we got the
13  transcription to you in a couple of days and then it
14  was signed, would that be acceptable?
15     THE COURT: This is a hearing that is
16  taking place right now and when it finishes we will
17  sign it.
18     MR. COLLINGSWORTH: Okay. Thank you. At
19  this point I would move the introduction into evidence
20  of Exhibit~1; but, again, we're not asking the Court to
21  rule on that motion.

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing
March 16, 2012

Page 42

1 BY MR. COLLINGSWORTH:

2 Q And was his first name Vicente?

3 A Yes, Vicente Castano.

4 THE CLERK: Wait, the machine is stuck.

5 THE COURT: I think that during recess we

6 will switch devices because this one is a little old.

7 It's saving.

8 MR. COLLINGSWORTH: We might as well go off

9 the record.

10 THE VIDEOGRAPHER: Going off the record

11 at 11:08.

12 (Deposition recessed at 11:08 a.m.)

13 (Deposition resumed at 11:20 a.m.)

14 THE VIDEOGRAPHER: We're back on the record

15 at 11:20

16 BY MR. COLLINGSWORTH:

17 Q Mr. Gelvez, you said that Vicente Castano

18 had the people from Prodeco take out a notebook and

19 make some calculations. Did you come to an agreement

20 about the money that was involved?

21 A Yes. The proposal submitted by Mr. Profe,

Page 43

1 Mr. Manuel Gutierrez took notes about such proposal and

2 El Profe told Mr. Manuel Gutierrez that once he had

3 information pertinent to that subject matter they would

4 travel, whether by plane or helicopter, to Monteria and

5 he would then pick him up so he would talk then to

6 Carlos Castano.

7 Q Was there an agreement reached to create a

8 base at Silencio?

9 A As I told you previously, the place was

10 proposed by Luis Ochoa. However, the Profe submitted

11 it as a suggestion.

12 Q El Profe submitted it to who as a

13 suggestion?

14 A Luis Ochoa submitted it to El Profe and El

15 Profe took it as a reference point or reference or

16 suggestion.

17 Q After the meeting you've described with

18 your Prodeco team at El Profe, did your team have a

19 meeting with Drummond?

20 A Yes.

21 Q Please tell us about that meeting. Please

Page 44

1 tell us about that meeting between Drummond and

2 Prodeco.

3 MR. JEFFRESS: Let the record show that the

4 witness is reading his declaration again.

5 THE WITNESS: My memory is not so

6 wonderful, sir, and I just do it as a reference, you

7 know.

8 THE COURT: We need to clarify then such

9 notes. Such notes -- he's reading from the notes that

10 were given by the attorney. If he cannot read from

11 those notes, well, you give him yourself, so then we

12 should then remove those notes from the witness then.

13 MR. COLLINGSWORTH: We don't need to get

14 into an argument. If he wants to look at his

15 declaration he's Perfectly able to do that. There is

16 no problem.

17 MR. JEFFRESS: Well, but the only thing the

18 record has to show that.

19 THE INTERPRETER: I'm sorry, Counsel.

20 MR. JEFFRESS: The record must show that

21 when that happens.

Page 45

1 MS. FONSECA: I want to remind the various

2 attorneys that this statement was not made by

3 Mr. Terrence or anybody else. This statement was made

4 by him. So, therefore, I don't see for the objection.

5 So I overrule the objection.

6 MR. COLLINGSWORTH: Thank you.

7 MS. FONSECA: When the witness is looking

8 at his own contributions to this investigation. Thank

9 you.

10 BY MR. COLLINGSWORTH:

11 Q Back to the question: Can you, please,

12 tell us about the meeting that occurred between

13 Drummond and Prodeco after the Prodeco team had its

14 meeting with El Profe?

15 A Can you repeat the question, please?

16 Q Yes.

17 After the Prodeco team met with El Profe,

18 you said you had a meeting with Drummond. I'm asking

19 you to, please, tell us what you remember about that

20 meeting with Drummond?

21 A Like ten days, like ten days after Profe

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing
March 16, 2012

Page 86

1  A  Who is saying it is -- who is saying it is
2  you, sir.  I'm clarifying to you that it was in 2009.
3     BY MR. JEFFRESS:
4  Q  So to clarify, you were captured in Cucuta
5  in what year?
6  A  In 2009, September 23rd of 2009.
7  Q  And what were the four crimes that you were
8  arrested for?
9     THE COURT: One moment.
10    THE WITNESS: I will ask Your Honor to
11 please eliminate that question.  I will not answer such
12 question, since at this time I am free and I have been
13 exonerated from that proceeding.
14    THE COURT: At the beginning of the hearing
15 we said that many of these questions have criminal
16 implications and you had the right to remain silent,
17 therefore, we will accept such request.
18    BY MR. JEFFRESS:
19 Q  Have you been charged -- are you presently
20 charged with a crime?
21 A  Yes, sir.

Page 87

1  Q  And what is that crime?
2     THE WITNESS: I'd like to omit that answer
3  as well, Your Honor, because these are things that are
4  relative to different times and places.  I don't know
5  what these questions have to do with what I am
6  testifying about.
7     THE COURT: And the same rights protect him
8  as were mentioned before.
9     BY MR. JEFFRESS:
10 Q  You told Mr. Collingsworth that one
11 condition of the Justice and Peace law is that you tell
12 the truth.  Do you remember that?
13 A  Yes, sir.
14 Q  And do you refuse to --
15    MS. FONSECA: Dr. Jeffress, Dr. Jeffress,
16 it is true that one of the conditions for being within
17 the Justice and Peace process for my client, Mr. Jose
18 Del Carmen Gelvez Albarracin, is that he always say the
19 truth, but not within a jurisdiction which is different
20 from our own because he is being investigated and
21 processed for those crimes which you want to find out

Page 88

1  about today.
2     And let me remind you that it is not Mr.
3  Alvarracin who is being investigated within the
4  proceeding that you are trying to inquire about, but
5  rather the companies that you are representing,
6  otherwise we would be within or making a violation to
7  one of the ruling principals in criminal law.
8     The non bis in idem, and for this Justice
9  and Peace process there are prosecutors and judges that
10 naturally belong within the process and that will
11 determine or ascertain the responsibility for those
12 crimes.
13    And as he mentioned before, he was
14 exonerated of one of them and that is precisely the one
15 that he was captured for.  There are others that have
16 been precluded in his favor.  Thank you.
17    BY MR. JEFFRESS:
18 Q  So, Mr. Gelvez, why are you in jail?
19 A  Within the process whereby I was captured,
20 I accepted the process for being recorded.
21    THE INTERPRETER: The interpret has to

Page 89

1  inquire about what the witness just said.
2     THE WITNESS: Aggravated collusion.  I
3  accepted responsibility for aggravated collusion for
4  having been a part of the AUC.  I was sentenced to 36
5  months and in 2010, precisely in December, I was
6  notified of an extradition proceeding for the very same
7  deeds and charges that I was accused of in 2004.
8     And just for your knowledge, which is
9  what you would like to know, the proceeding is under
10 the pages of the honorable judge -- and I have to
11 look in my agenda -- Luis Guillermo Salazar Otero
12 which if you deem fit you can ask for more
13 information regarding my proceeding.
14    BY MR. JEFFRESS:
15 Q  Going back a second, and you can consult
16 with your lawyer if you like.  If you were to lie here
17 today would that affect your status in the Justice and
18 Peace process?
19 A  I'm sorry, Doctor, but your question lacks
20 respect, and I am saying the truth here today.  I'm
21 surprised that you asked me that.  I am emersed in a

1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF ALABAMA

3                   (Southern Division)

4

5   CLAUDIA BALCERO GIRALDO,

6   et al.

7             Plaintiffs

8   vs.                          Case No. 2:09-cv-1041-RDP

9   DRUMMOND COMPANY, INC.,

10  et al.

11            Defendants

12  _____/

13

14          The Letters Rogatory Video Hearing in the

15  above-entitled matter, as translated by GUIOMAR EMEDAN-

16  LAUTEN and MARIA KISIC, INTERPRETERS, was held on

17  Friday, March 22, 2012, commencing at 9:15 a.m., at the

18  Ninth Civil Circuit Court of Barranquilla, Atlantico,

19  Colombia, before the Honorable Clementina Patricia

20  Godin Ojeda and Steven Poulakos, Notary Public.

21  REPORTED BY:  Steven Poulakos

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Jhon Jaime Esquivel Cu
March 22, 2012

Page 6

1      MR. COLLINGSWORTH: Thank your, Your Honor.
2  I am Terry Collingsworth the attorney for the
3  Plaintiffs.  I will be asking the questions.  With me
4  is my colleague, Lorraine Leete, who is here behalf of
5  the Plaintiffs as well.
6      THE COURT: Thank you.
7      And present here counsel for Drummond
8  Company, Inc.?
9      MR. JEFFRESS: Buenos dias.  My name is
10  William Jeffress.  I will be asking questions on behalf
11  of the Defendants in the lawsuit.  I have other counsel
12  with me and I'll ask them to introduce themselves.
13      MR. CUELLAR: Jaime Bernal Cuellar.
14      MR. DAVIS: Tony Davis.
15      MR. PARR: Bryan Parr.
16      MR. LINARES: Jose Miguel Linares.
17      THE COURT: So now that both parties have
18  stated their names for the record and also those
19  representing Drummond Company and Drummond Limited,
20  also the president for DDL, Agusto Jimenez.  He also
21  has a representative here present.

Page 7

1      MR. JEFFRESS: Yes, Your Honor.  I also
2  represented Agusto Jimenez.
3      THE COURT: Thank you.
4      So now that both parties have stated
5  their names for the record we now proceed to
6  identity witness for the record.
7      So before we begin with the proceeding
8  we would like for him to stand and be sworn.
9      Mr. Jhon Jairo Esquivel Cuadrado, you
10  have been asked to be sworn here and under oath
11  present your testimony here today.  And so now that
12  both parties have identified themselves.
13      You have been brought here so that the
14  facts regarding whatever knowledge you may have will
15  be set forth on a record.  You are thus being called
16  to bring testimony under oath which means that you
17  are to say only the truth of what you know, what you
18  have knowledge of, or what you have witnessed.
19      Do you so swear?
20      THE WITNESS: Yes.
21      THE COURT: So once you have now sworn to

Page 8

1  say only the truth, let me indicate that in case you
2  should state any falsity for this record you would be
3  incurring in a crime which is punishable by our laws
4  which is perjury.
5      Also let me warn you that according to
6  Colombian law you are not compelled to testify
7  against yourself or your family members to the
8  fourth generation, according to Colombian rules.
9      The questions you will answer should be
10  answered clearly and specifically referring to the
11  facts about which you will be questioned.
12      If you should have any doubts or
13  anything that you do not understand, you should
14  indicate this and then this Court will help you
15  understand.
16      We ask everyone to be present with the
17  utmost respect for this Court, to answer no cells so
18  that we can move along swiftly, and to ask to use
19  the microphones whenever you need to speak.  We can
20  now sit.  Thank you.
21      Now we proceed with the general

Page 9

1  proceeding.
2      Your full name for the record?
3      THE WITNESS: My full name is Jhon Jaime
4  Esquivel Cuadrado.  My ID number is 10.901.999 from
5  Violencia, Cordoba.
6      THE COURT: Aliases you have ever been
7  known by?
8      THE WITNESS: I have the following Aliases:
9  El Tigre, Diego, or 55.
10      THE COURT: (Speaking Spanish.)
11      THE WITNESS: I am single.  Yes, I have one
12  child.
13      THE COURT: Your profession?
14      THE WITNESS: Currently I am detained, but
15  I was a part of the AUC.
16      THE COURT: When were you a member of the
17  AUC, starting when?
18      THE WITNESS: I started with the AUC in
19  1990.  In 1996 I was transferred to the Magdalena area
20  in Cesar.
21      THE COURT: And now in compliance with the

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Jhon Jaime Esquivel Cu
March 22, 2012

**Page 10**

1 request of Rogatory Letters having performed all of the

2 legal requirements according to Colombian law we give

3 the floor to Plaintiffs.

4    MR. COLLINGSWORTH: Thank you very much,

5 Your Honor, and on behalf of the Plaintiffs, thank you

6 for your flexibility in arranging this room and

7 allowing us to conduct these proceedings here.

8    THE COURT: With pleasure.

9    MR. COLLINGSWORTH: Before I begin

10 questioning the witness I have two preliminary matters

11 to raise with Your Honor.

12    First, counsel for Drummond and I, Mr.

13 Jeffress, have agreed that we are reserving all

14 objections, substantive objections, to evidence so

15 that we won't be making those objections regarding

16 testimony or documents, and we will take those up

17 before our judge in Alabama under the U.S. rules

18 with one exception, and that is if there is an

19 improper form of a question we will note it for the

20 record now so that the opposing counsel have the

21 opportunity to correct it, if he wishes, but we're

**Page 11**

1 not asking Your Honor to rule on those questions.

2    Mr. Jeffress agrees with that?

3    MR. JEFFRESS: Se.

4    THE COURT: Okay.  So long as both parties

5 are in agreement, we can begin.

6    MR. COLLINGSWORTH: Second item, Your

7 Honor, is that there is an attorney present here for

8 Drummond, Jaime Bernal Cuellar.  We would move the

9 Court to exclude him from these proceedings for two

10 reasons.

11    The first is that he has filed a

12 criminal complaint against the witness and we think

13 it is improper for him to be here in any way

14 purporting to represent a party in these

15 proceedings.

16    The second reason is that he, Mr.

17 Cuellar, is now a material witness to the facts of

18 this case.  We contend that he has visited several

19 of the witnesses, including Mr. Esquivel, to have

20 discussions about their relationships to Drummond

21 and so it would be inappropriate for him to hear the

**Page 12**

1 testimony of another witness, Mr. Esquivel, because

2 he is going to be a witness in these proceedings.

3    THE COURT: So we will resolve this request

4 in the following manner:  Regarding the first reason,

5 it is not acceptable by this office because this is a

6 public hearing.

7    Regarding the second reason, this office

8 deems that we will accept that reason thus ordering

9 Mr. Jaime Cuellar to, please, leave the room because

10 being that he will be a witness in this cause it

11 would not be adequate for him to listen to the

12 testimony of this witness here present today.

13    Not before though we request proof that

14 Dr. Jaime Cuellar will be a witness in this

15 proceeding, in this lawsuit.  And since he is indeed

16 present, we proceed to ask him if he is indeed going

17 to be a witness during this lawsuit.

18    MR. CUELLAR: Thank you very much, Your

19 Honor.  I currently do not know if my name has been

20 mentioned as a possible or as a possibility for

21 being a witness during this lawsuit.

**Page 13**

1    I have not had any notification from

2 any U.S. court that I may be required to be a

3 witness, therefore, my understanding is that there

4 should be such a notification before I know that I

5 will indeed be a witness for this lawsuit.

6    MR. JEFFRESS: May I speak, Your Honor?

7    THE COURT: Just one minute, please.

8    I have listened to Dr. Jaime Cuellar's

9 reply, but we had requested a proof, an evidence.

10    MR. COLLINGSWORTH: Your Honor, under our

11 system we have a process to issue either a Notice of

12 Deposition or Letters Rogatory such as brought Mr.

13 Esquivel to the court today.

14    And I'm representing to the Court that

15 we will be filing on Monday with our court a Letters

16 Rogatory requesting that Mr. Cuellar appear as a

17 witness in this case.

18    And I would like to hand, Your Honor, a

19 declaration that was signed by Mr. Esquivel that

20 indicates that there were three individuals,

21 including Mr. Cuellar, who visited him in prison and

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Jhon Jaime Esquivel Cu
March 22, 2012

---

Page 14

1 encouraged him not to speak about Drummond, and that
2 is the topic of which we will be examining Mr.
3 Cuellar.
4     THE COURT: We will now hear from the
5 representative of Drummond who had asked to speak.
6     MR. JEFFRESS: Thank you, Your Honor.
7     The -- in February of 2010 the Fiscalia
8 took testimony from Mr. Esquivel in a proceeding at
9 which Dr. Bernal and another attorney named Nodier
10 Agudelo, were present.
11     Mr. Cuellar testified under the oath to
12 the Fiscalia in a manner that we believe to be
13 entirely true.
14     Mr. Esquivel has now signed a
15 declaration that has been given to Your Honor in
16 which he claims that he lied under oath to the
17 Fiscalia.  He says in this declaration falsely, we
18 believe, that he was threatened somehow by the
19 Fiscalia, by Dr. Bernal, and by Dr. Agudelo.
20     Your Honor, based on that, Mr.
21 Collingsworth --

---

Page 15

1     THE COURT: One moment.  First of all, in
2 order to expedite matters let me say that I do not
3 believe we are in the midst of a hearing where we are
4 making statements that are material to this lawsuit.
5     So having heard what I have thus far
6 heard and having before me proof that Plaintiff has
7 presented.  I think we have enough elements in order
8 to resolve this administrative matter here today.
9     Thus we resolve in the following manner:
10 This office does not find sufficient proof or
11 elements in order to exclude Dr. Cuellar because
12 what has been mentioned by both parties -- or by
13 Plaintiffs, does not constitute an impediment for
14 Dr. Bernal Cuellar to be present here today.
15     Due to the fact that he is here present
16 representing the Defendants, thus excluding him from
17 the room, would go against due process for the
18 Defendants.
19     Aside from the fact that even though
20 there are several representatives for the
21 Defendants, only one of them will be speaking on

---

Page 16

1 behalf of the Defendants, and that representation
2 falls to Dr. Jeffress and not Dr. Bernal Cuellar.
3     MR. COLLINGSWORTH: Thank you, Your Honor.
4 I noted it for the record.
5     THE COURT: And so we can begin with the
6 interrogation and Dr. Collingsworth may now ask
7 questions.
8     MR. COLLINGSWORTH: Thank you, Your
9 Honor.  May it please the Court.
10     EXAMINATION BY MR. COLLINGSWORTH:
11 Q   Mr. Esquivel, can I ask you first, you were
12 in the Colombian military for a while; is that correct?
13 A   Yes, I was in the Colombian Army.
14 Q   Can you tell us how old you were when you
15 joined?
16 A   I had just turned 18 and I started with the
17 AUC being a minor.
18 Q   When did you join the Colombian military,
19 the regular military?
20 A   In 1993.
21 Q   How old were you when you joined the

---

Page 17

1 Colombian military?
2 A   Eighteen years of age.
3 Q   And what service did you do while you were
4 in the military?
5 A   This was in Battalion 31 in Carepa.
6     THE COURT: Antioquia?
7     THE WITNESS: And also in the Battalion
8 Francisco de Paulo Veles.
9     THE COURT: Where was that?
10     THE WITNESS: That was between Apatado and
11 Carepa, and also in the Battalion 31, Voltijero.
12     BY MR. COLLINGSWORTH:
13 Q   Were you an infantry soldier?
14 A   I was an infantry soldier.  I was a
15 patrolman in the banana area.  Banana area, yes, that
16 is Carepa.  It is a banana area.
17 Q   Did you engage in any battles while you
18 were in the Colombian military?
19 A   When I was in the Army, yes, I had many
20 confrontations, many confrontations with the Fifth
21 Front of the FARC.  It is correct.

---

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing - Jhon Jaime Esquivel Cu
March 22, 2012

Page 138

1 September 7th of the year 2000 I was already in jail.
2 Q  So what knowledge do you have about this
3 document?
4 A  Of this one, of this one I don't have any
5 knowledge because I was already detained by then.  I
6 can respond until July 19th of the year 2000.
7 Q  Well, look at the next document, which is
8 Denuncia Publica.  Have you ever seen this document
9 before?
10 A  No, this is the first time.
11 Q  Do you know how it got attached to your
12 declaration?
13 A  I have no knowledge.  This is the first
14 time I've seen it.
15 Q  Now, going back to the November 1999
16 meeting I've asked you about.  After that meeting ended
17 did your men blow up Drummond's train?
18 A  Amin and Pirulo did it.  They were the ones
19 in charge of the Carretera Negra, or the Black Road,
20 but not my men, no.
21 Q  Did you give the orders for them to do it?

Page 139

1 A  At no time.
2 Q  Do you know why they waited from November
3 of 1999 to April of 2000 to blow up the train?
4 A  I have no idea because the person in charge
5 of that was Rodrigo Tovar Pupo.
6 Q  You say in paragraph 9 of your
7 declaration -- I'm sorry, paragraph 12 of your
8 declaration that you personally carried out the
9 dynamite operation in April of 2000 along with alias
10 Pirulo?
11 A  I have knowledge, but Mr. Cuarenta was not
12 either.  That was Amin and Pirulo.  Pirulo was first a
13 member of the ELN and then joined the AUC, and he's an
14 explosives expert.
15 Q  Mr. Esquivel, you signed the declaration
16 that says, quote, I personally carried out the dynamite
17 operation in April 2000 along with alias Pirulo.  Now,
18 is that true or is that false?
19 A  I have knowledge of it because I was the
20 commander of the Front.  I have knowledge of it.
21 Q  But you didn't personally carry out the

Page 140

1 attack?
2 A  Well, no, I did not do it personally
3 because I don't have knowledge of explosives.  And if
4 asked about this at Justice and Peace by the Fiscalia I
5 will say that I have knowledge of it, but I did not do
6 it.
7 Q  Why did you sign a declaration that said
8 something that was not true?
9     MR. COLLINGSWORTH: Objection,
10 mischaracterizes his testimony.
11     THE WITNESS: Yes, it did happen.
12     BY MR. JEFFRESS:
13 Q  Not question is:  Why would you sign a
14 declaration said that something that was not true?
15     MR. COLLINGSWORTH: Objection.  It
16 mischaracterizes the testimony.
17     THE WITNESS: It did happen and I have
18 knowledge of it and Amin confirmed it did happen.
19     BY MR. JEFFRESS:
20 Q  Look further in paragraph 12 you say a
21 month later in May of 2000, we assassinated five people

Page 141

1 near Casacara, Becerril who you identified as being
2 collaborators with the FARC guerilla and authored the
3 attack?
4 A  Mr. Cuarenta's orders were that anyone
5 associated with the FARC and anyone who was around the
6 Drummond area had to be put down.
7     THE COURT: I just want to interrupt one
8 second and indicate to the witness, Jhon Jaime, that
9 since the facts that are being questioned and the
10 questions that are being asked imply criminal
11 responsibility, he can resolve the answers he will give
12 without being held to the oath he took before, and we
13 may then continue.
14     MR. JEFFRESS: I'm told the tape is almost
15 out of tape.  Should we take a short break?
16     THE COURT: Yes, we'll take a five-minute
17 recess to prepare the next tape.
18     THE VIDEOGRAPHER: We are going off the
19 record at 3:25.
20     (Deposition recessed at 3:25 p.m.)
21     (Deposition resumed at 3:35 p.m.)

1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF ALABAMA

3                 (Southern Division)

4

5    CLAUDIA BALCERO GIRALDO,

6    et al.

7               Plaintiffs

8    vs.                    Case No. 2:09-cv-1041-RDP

9    DRUMMOND COMPANY, INC.,

10   et al.

11              Defendants

12   _____/

13

14          The Letters Rogatory Video Hearing of

15   LIBARDO DUARTE, as translated by CONSUELO BURRANCA and

16   MARIA KISIC, INTERPRETERS, was held on Monday, April

17   16, 2012, commencing at 9:00 a.m., at the Fifth Civil

18   Circuit Court of Bogota, Carrera 9 Number 11-45, Barrio

19   El Centro, Bogota, before The Honorable Manuel Galindo

20   Arguello and Steven Poulakos, Notary Public.

21   REPORTED BY:  Steven Poulakos

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

Page 6

1  representative of the Plaintiff.
2    THE COURT: Of the Plaintiffs, right,
3  she's attorney for?
4    MS. LEETE: Yes.
5    THE CLERK: Bryan Henry Parr, Bryan H.
6  Parr, right?
7    MR. PARR: Right.
8    THE CLERK: Bryan's passport number is
9  43658203, United States passport, and he is an
10 attorney for the Defendants.
11   THE COURT: You can raise your hand,
12 please, so we know who you are.  Thank you.
13   THE CLERK: Hugh Thomas Wells, the III.
14 He's also an attorney for the Defendants.  There is
15 actually several attorneys for the Defendant, and
16 Mr. Thomas Wells' passport number is 17432449, U.S.
17 passport.
18   And also William Anthony Davis, passport
19 number 456740440, and he's also an attorney for the
20 Defendants.
21   Also Blake Edwards, passport 470848985.

Page 7

1  He's also a representative for Drummond, and he's --
2    THE COURT: (Speaking in Spanish.)
3    THE INTERPRETER: -- in Colombia, and
4  the parent company is in the U.S., and that's INC.
5    THE CLERK: Maria J. Kisic, interpreter,
6  K22055060588-0.  Consuelo Maria Burranca, and that's an
7  ID B65211352669, also an interpreter residing in
8  Florida.
9    THE COURT: Is this person present?
10   THE INTERPRETER: Yes, Your Honor.
11   THE CLERK: Terrence Collingsworth and
12 also an ID number 2118104, and he's also an attorney
13 for the Plaintiffs.
14   Also Attorney Carlos Toro whose ID
15 number is 10091266 and bar association number
16 111205.  He is a representative in the process of
17 Justice and Peace for the Witness, Libardo Duarte.
18   THE COURT: We need to ask also, according
19 to the representation of Mr. Toro it is criminal and we
20 would like to know if Mr. Duarte is also going to
21 appoint Mr. Toro as his attorney in this civil matter.

Page 8

1    THE WITNESS: Your Honor, good morning.
2  Since he is in the process of Justice and Peace and it
3  is for me and actually necessary for him to be here in
4  this proceeding since it's part thereof.
5    My name is Libardo Duarte and my ID
6  number is 91489523 which was issued in Bucaramanga,
7  Santander, and I was born in Medellin, Antioquia,
8  and I was born on November the 15th.
9    THE COURT: That's enough.  Can you provide
10 us an ID?
11   THE WITNESS: Your Honor, we are deprived
12 of our freedom and, therefore, we are not allowed to
13 have any type of documentation, personal ID or other
14 sorts.
15   THE COURT: We have been recognizing the
16 representation for Mr. Toro to represent Mr. Duarte in
17 this hearing.
18   THE WITNESS: Thank you, Your Honor.
19   THE CLERK: And through the code of
20 criminal procedure 422 and according to also Law 266,
21 267, the judge will swear the witness by which sworn-in

Page 9

1  procedure he will tell the truth, only the truth, and
2  nothing but the truth.
3    THE COURT: We will then proceed to swear
4  the witness.
5    All the attendants should stand.
6    In accordance to the request of Letters
7  Rogatories and of the Courts of Alabama and at the
8  request of other attorneys present here you have
9  been called to testify in this matter.
10   And in this hearing the judge will
11 administrator the oath.  So you will swear to tell
12 the truth in this hearing that is about to commence
13 with the caveat that in regards to any questions
14 that have to do with the penal proceeding or the
15 penal matter, you are not bound to testify since,
16 according to the constitution and the law of
17 Colombia, you are not to testify against yourself or
18 against any family member that is with the fourth
19 degree of blood relationship or blood kinship.
20   And, Mr. Duarte, you are hereby -- your
21 oath is to tell the truth, and if you do not tell

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

Page 10

1 the truth that will be sanctioned by the Colombian
2 law. And you are hereby sworn to tell the truth in
3 front of the judge. You're being sworn in.
4     You know the responsibility that you
5 have in front of the law and the judge. Do you
6 promise to tell the truth and only the truth to the
7 testimony that you will give?
8     THE WITNESS: I swear, Your Honor, that I
9 will tell the truth and only the truth.
10     THE COURT: Thank you.
11     THE WITNESS: Thank you, Your Honor.
12     THE COURT: Let the record reflect that
13 there is here a court reporter and also a videographer.
14 Before having administered the oath we will have on the
15 record that they are all here present. The attending
16 individuals, let's put their names again.
17     THE INTERPRETER: Let the record reflect
18 that the judge will administer the oath to the
19 interpreters.
20     THE COURT: Do you authorize the
21 interpreters to be here?

Page 11

1     MS. LEETE: Yes.
2     THE COURT: The same attorney then has
3 given authorization for the proceeding of Mr. Poulakos
4 to proceed as court reporter and Mr. Sherman as the
5 videographer.
6     MR. DAVIS: Speak up. We have a lot of
7 noise. So look over this way when you talk also.
8     THE INTERPRETER: I will.
9     (INTERPRETERS SWORN)
10     THE INTERPRETER: Yes.
11     THE INTERPRETER: Yes.
12     THE COURT: Well, then we will proceed to
13 ask Mr. Duarte to give us his personal information in
14 accordance to law. Please give us your general
15 information like your age and nationality and other
16 pertinent information.
17     THE CLERK: Where were you born?
18     THE WITNESS: In Medellin, Counsel.
19     THE CLERK: Are you of age? You're of age?
20 What's your status?
21     THE WITNESS: I am in a domestic

Page 12

1 partnership.
2     THE CLERK: You reside where?
3     THE WITNESS: At La Picota jail in the City
4 of Bogota.
5     THE CLERK: And the studies that you have
6 also had, yes.
7     THE WITNESS: The high school is Marco
8 Fidel Suarez of Medellin, and I also studied at
9 university conflict resolution from the University of
10 Antioquia and also public relations in the University
11 of Luis Amigo during the process of Justice and Peace.
12     THE COURT: (Speaking in Spanish.)
13     THE WITNESS: Yes, Your Honor, and in the
14 City of Medellin.
15     THE COURT: And any university studies?
16     THE WITNESS: In Ralitos I studied at the
17 center, Your Honor. I don't know if that will count as
18 such studies.
19     THE COURT: Do you have any type of kinship
20 or blood relations with those people that are the ones
21 that are suing, the Plaintiffs?

Page 13

1     THE WITNESS: Not at all. My commitment is
2 with the process of Justice and Peace, that everything
3 has to do with compensation and justice.
4     THE COURT: Now, we have the part with the
5 questions. Let's take a look at our file to make sure.
6     Counsel, questions for the Duarte case.
7 (Conversing in Spanish.) Give us a second, please.
8     MR. COLLINGSWORTH: Now, go off.
9     THE VIDEOGRAPHER: We're going to go off
10 the record at 10:40.
11     (Proceedings recessed at 10:40 a.m.)
12     (Proceedings resumed at 10:50 a.m.)
13     THE VIDEOGRAPHER: We are back on the
14 record at 10:50.
15     Going off the record at 10:53.
16     (Proceedings recessed at 10:53 a.m.)
17     (Proceedings resumed at 10:54 a.m.)
18     THE VIDEOGRAPHER: Back on the record at
19 10:54.
20     MR. COLLINGSWORTH: Are we ready to
21 proceed?

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

Page 14

1 THE CLERK: Your name?

2 MR. COLLINGSWORTH: Terrence Collingsworth.

3 THE COURT: We're going to give you the

4 word just as you requested it.

5 MR. COLLINGSWORTH: Thank you, Your Honor.

6 THE CLERK: We will then proceed with the

7 Rogatory examination that was requested by the Court,

8 from the District Court, Northern District of Alabama

9 of the United States in regards to the witness, Libardo

10 Duarte; that the attorney for the Plaintiffs, according

11 to the proceedings, will substitute the questions that

12 are found in the Letters Rogatory which number is 158.

13 They will proceed to ask directly the

14 questions and then asked by Mr. Terrence

15 Collingsworth.

16 MR. COLLINGSWORTH: Thank you very much.

17 And thank you, Your Honor, for allowing us to invade

18 your space here with so many people. We appreciate

19 your cooperation.

20 MR. DAVIS: May I, Your Honor, after

21 Mr. Collingsworth rests Drummond will then ask its

Page 15

1 questions?

2 THE COURT: That is right.

3 MR. COLLINGSWORTH: And, Your Honor, I want

4 to put on the record a stipulation that I have with

5 Mr. Davis, counsel for Drummond, that because the U.S.

6 evidence rules will apply to this testimony we are not

7 asking Your Honor to rule on any evidentiary

8 objections.

9 THE COURT: It's an agreement that you have

10 with the attorney, right?

11 MR. COLLINGSWORTH: Yes.

12 THE INTERPRETER: The judge is

13 explaining on the record what you just manifested so

14 he's putting it into an iteration.

15 THE COURT: (Speaking in Spanish.)

16 Any type of evidentiary issue will be

17 dealt with according to the Court and agreed to the

18 laws of the United States in accordance with

19 attorney for Drummond, Inc.

20 All attorneys agree that, Your Honor,

21 the judge will be relieved from any type of

Page 16

1 resolving of objections. In this regard the

2 judge -- it's feasible -- deems that it's feasible

3 to authorize such request. However, clearly finding

4 that and expressing clearly that the proceeding

5 applied to this proceeding is going to be of a civil

6 nature according to Colombian law to gather or

7 obtain the requested testimonial evidence.

8 That is, that they have a right for the

9 Court over there to assess evidence presented.

10 However, we will follow here court of civil

11 procedure here for gathering such evidence.

12 Then questioning may begin by Attorney

13 Terrence Collingsworth.

14 MR. COLLINGSWORTH: Thank you, Your Honor.

15 EXAMINATION BY MR. COLLINGSWORTH:

16 Q Mr. Duarte, thank you for coming today.

17 A Okay.

18 Q Can you tell us any aliases that you have

19 used?

20 A The aliases which I was known at the AUC

21 was El Paisa, Mono Maicol, Maicol, and Bam Bam.

Page 17

1 Q Thank you.

2 Can you tell us when you first joined any

3 paramilitary organizations?

4 THE COURT: Precisely I want an observation

5 about that. According to Colombian law you're trying

6 to insinuate the answer with such question.

7 The question is, when did you join, like

8 leading to believe that he always belonged to such

9 organization. So we need to change that question.

10 We should ask rather if he was ever a

11 part of a paramilitary group.

12 BY MR. COLLINGSWORTH:

13 Q Mr. Duarte, did you ever join a

14 paramilitary organization?

15 A Since the age of nine years from the Uraba

16 Antiocqueno since my father was a co-founder with

17 Mr. Fidel Castano of the AUC groups in Colombia.

18 Q What did you do as a nine-year old that

19 involved the paramilitary group?

20 A As I said, my father was a co-founder of

21 it. Since the age of nine years, since they killed my

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

Page 18

1  father in the Uraba Antioqueno I ended up being raised
2  by the Castano brothers.
3  Q   What were the first names of the Castano
4  brothers who raised you?
5  A   Fidel Castano Gil and Carlos Castano Gil,
6  who was my Godfather when I was born and also on my
7  confirmation.  That's it.
8  Q   What was the name of the paramilitary group
9  at the time you were nine-years-old that you were a
10  member of?
11  A   At that time they were called Los Rurales.
12  These were groups that were operating in the lower
13  parts of the Uraba Antioqueno and Cordoba and
14  Antioquia.
15      After that it was called Los Tangueros,
16  paramilitary group Los Tangueros until the year of
17  1992.  That took place, the first demobilization of all
18  of these groups that were above the law, between Los
19  Tangueros paramilitary group and the EPL from the
20  guerillas.
21      After that they were called AUCCU which is

Page 19

1  paramilitary farmer defense groups.  In 1994 they were
2  called AUCCU, which should be A-U-C-C-U, which those
3  are the self-farmers defense groups of Cordoba and
4  Uraba.  And in 1996 they were called Autodefensas
5  Unidas de Colombia.
6  Q   While we're having this discussion today,
7  if I say AUC, that's describing the final unity group
8  in 1996 that came together; is that correct?
9  A   What happened is that the AUC, the united
10  defense groups of Colombia --
11      THE COURT: I'm sorry, what was the
12  question?  What was the question?
13      MR. COLLINGSWORTH: My question was:  If I
14  say AUC, that accurately describing the paramilitary
15  group that united in 1996 that you just talked about?
16      THE COURT: Did you understand the
17  question?
18      THE WITNESS: Yes, Your Honor.
19      Shall I answer it?
20      THE COURT: Yes, you may.
21      THE WITNESS: The AUC, the united forces of

Page 20

1  Colombia, defense, defense of Colombia, always depended
2  of the AUCCU which are the defenses of Cordoba and
3  Uraba.  And the general command post was at the Sante
4  Catalina farm, and this was located at the
5  Corregimiento San Pedro de Uraba, Antioquia.
6      The main commanders of the AUC, okay,
7  from the main heads or main leadership it was Carlos
8  Castano Gil, was the main commander, and Mr. Rodrigo
9  00.  He was the commander in chief of the military
10  forces of the AUC.  And Mr. Vicente Castano Gil was
11  the commander and chief in the political and
12  financial field of the AUC.
13      But I should highlight and mention that
14  when the AUC were formed Mr. Fidel Castano was not
15  part of this leadership anymore because he was put
16  down in 1993.  That's it.
17      MR. DAVIS: We move to strike as
18  nonresponsive.
19      BY MR. COLLINGSWORTH:
20  Q   And when you say put down, does that mean
21  he was killed in 1993?

Page 21

1  A   He disappeared.
2  Q   When was the first time that you had any
3  involvement with Drummond, the Drummond Company?
4  A   It was probably around 1997, from 1997.
5      THE COURT: Objection.  There was an
6  objection from the Court.  This was asked in an
7  assertive mode as if that had been asked, and that has
8  been the case, but that, however, is not, since as it
9  happened on prior occasion.
10      You should rather ask so we do not press
11  upon the answer instead of when did you have
12  participation did you ever have any participation so
13  it can be admitted or not by the witness.
14      MR. COLLINGSWORTH: Thank you, Your Honor.
15      BY MR. COLLINGSWORTH:
16  Q   Did you ever have any involvement with the
17  Drummond Company?
18  A   For a long time.
19  Q   When was the first time you had involvement
20  with the Drummond Company?
21  A   It's just, Your Honor, I could not tell you

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

---

Page 70

1 diesel and gasoline. Colors yellow with white. And
2 there's like a little roof, like a little house in
3 there. I don't know if they have it there -- I
4 don't know what they are keeping there. That's also
5 white. That's it.
6     BY MR. COLLINGSWORTH:
7 Q  Is there a guard station to get into this
8 area that you've described where the trains are
9 loaded -- unloaded?
10 A  Yes. It's the man that opens the gate, of
11 course, but that is placed a little bit to the left of
12 the gate.
13     But the uniform there of those guards, the
14 color was very different from the color of the guard at
15 the Drummond mine.
16 Q  What was the difference?
17 A  It was kind of greenish, kind of green.
18     Further going in through that main road to
19 the left there's another military base there, the one
20 that is in charge of taking -- of guarding all of those
21 areas of Drummond, Prodeco, and Santa Marta airport.

---

Page 71

1 Q  Did you have to show any sort of
2 identification to get through the gates going down
3 through this port area?
4 A  No. I -- sporadically when I could I liked
5 to go all the way over there because so much technology
6 and so much of that it really just seemed very
7 interesting for us. We liked it. But that was very
8 sporadically. That was when a guide that had a hardhat
9 and a red shirt and a white pants, he would let us in.
10 He had a radio.
11     THE INTERPRETER: Jeans. I am sorry.
12 Interpreter corrects herself. Not white pants but
13 jeans.
14     THE WITNESS: But we will always also go in
15 to get gas in those pumps.
16     BY MR. COLLINGSWORTH:
17 Q  I'm going to show you a photograph that
18 I've marked as Exhibit 1.
19     (Duarte Exhibit 1 was marked for purposes
20 of identification.)
21     MR. COLLINGSWORTH: I'd like to see if the

---

Page 72

1 camera can pick that up.
2     BY MR. COLLINGSWORTH:
3 Q  Can you identify the person in that
4 photograph?
5 A  Your Honor, I was going to ask you if you
6 could help me because I don't know. This is --
7 this -- this is a picture that I don't know if it's
8 recent or not. It's been many years.
9     THE COURT: Pardon, could you explain this?
10 Do you know that number?
11     THE WITNESS: I don't know that number.
12     THE COURT: Could you, please, explain what
13 the number consists of?
14     MR. COLLINGSWORTH: That's an internal
15 number that stands for Drummond 20482. It's just the
16 number of the document.
17     THE COURT: But does it refer to an
18 individual as such that has a nickname or maybe an
19 alias?
20     MR. COLLINGSWORTH: No. It's just a
21 document.

---

Page 73

1     MR. DAVIS: We object.
2     MR. COLLINGSWORTH: I object to both of you
3 objecting here. You're speaking, Tony.
4     MR. DAVIS: We object to the discussion
5 here.
6     THE COURT: It just means that you are
7 supposed to focus your attention. Do you or do not
8 recognize that picture and if you do recognize or not
9 the individual that is depicted therein? That's it.
10 If you know him or you don't know him.
11     THE WITNESS: That's what I wanted you to
12 help me since this was -- since this was so long ago it
13 just seemed to me that it was the gringo guy that was
14 there at the Santa Marta mine. According to the
15 position that he had, one would see he was, as we used
16 to call him, the tough one, El Duro, E-L D-U-R-O.
17     (A discussion was held off the record.)
18     THE WITNESS: So, Your Honor, as I was
19 telling you when I refer to that term, El Duro, he is
20 the one that is the boss of everything. What was his
21 name? Mike, Mike, Mike.

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Libardo Duarte
April 16, 2012

Page 94

1  with this thing, this Drummond thing, something could
2  happen to her.
3     Again, I repeat everything.  The ones
4  that have done all of those things have been
5  Mr. Bocanegra and the man that supposedly is part of
6  the group of attorneys for Drummond, Jose Fernando
7  Neira.  The prosecutor's office, the protection
8  witness program, they gathered my whole family and
9  they took them outside of the country.
10    I immediately called Attorney Lorraine
11 through my attorney.  In that communication I told
12 her voluntarily that until my condition improved
13 within that security prison that I would better not
14 continue, that I would better not be interviewed.
15    BY MR. COLLINGSWORTH:
16 Q  Did you ultimately get your family --
17    MR. DAVIS: Move to strike all of that
18 testimony.
19    BY MR. COLLINGSWORTH:
20 Q  Did you -- did you ultimately get your
21 family to a safer place?

Page 95

1     MR. DAVIS: Object to form.
2     BY MR. COLLINGSWORTH:
3  Q  Don't tell us where, just yes or no.
4  A  Yes.  No, no, no, I don't even know where
5  they're at.  General prosecutor's office took them
6  away.
7  Q  Thank you.
8     Let me ask you if you ever attended any
9  public event or any event where you saw Gary Drummond?
10 A  Not me.  Once when we were in Santa Marta a
11 man came.  He seemed to be able to be a higher boss
12 than Mike, but I don't know who that man was.
13 Q  Was he American?
14 A  Of course, he was a gringo.  But there was
15 never a point in socializing, no, no, not for any
16 reason.
17 Q  But what did you see?  What was the reason
18 why you were there?
19 A  Well, it just happened that we were there
20 by chance because it happens that a driver, trailer
21 truck driver, he had run over a girl in San Pablo, a

Page 96

1  township in Magdalena, that is, before getting to the
2  unloading place for Prodeco.  And since he has fled --
3  he had fled from the scene, we had gotten there to
4  catch him.  When they told us about it he was already
5  at Prodeco when that man was there.
6  Q  Do you recall a time when some union
7  leaders who represented Drummond workers were murdered?
8     THE COURT: We will have to switch the
9  question so to not understand the question as being a
10 leading question.  He could be asked whether he knows
11 or knows the individual, if he knows that there were
12 people that were killed so that he can admit or not
13 admit.
14    BY MR. COLLINGSWORTH:
15 Q  Do you know of the fact that some leaders
16 of the Drummond union were murdered?
17 A  Yes, sir.
18 Q  Were you given any role by the AUC to look
19 into that incident?
20    MR. DAVIS: Object to the form.
21    THE WITNESS: That was between the years of

Page 97

1  2000 and 2002 approximately that two people were
2  killed, two individuals had had high positions within
3  the Drummond workers union.
4     BY MR. COLLINGSWORTH:
5  Q  And did you then have some role in
6  investigating those murders?
7     MR. DAVIS: Objection, form.
8     THE WITNESS: Well, it happens that when
9  those killings took place there was a lot of us
10 civilian population.
11    (Witness confers with counsel.)
12    How do we say in our own - in our own
13 jargon how would we say -- the way we say it.  The
14 civilian population they made known their
15 disapproval, their -- of the manner these people had
16 been killed.
17    And for that time, in that area of the
18 Cesar, Mr. Carlos Castano, he was carrying out some
19 work with the civilian population with Mr. Jorge
20 Cuarenta to start some projects.  These were
21 productive projects of African palm and rubber.  On

1

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF ALABAMA

3                    (Southern Division)

4

5   CLAUDIA BALCERO GIRALDO,

6   et al.

7              Plaintiffs

8   vs.                        Case No. 2:09-cv-1041-RDP

9   DRUMMOND COMPANY, INC.,

10  et al.

11             Defendants

12  _____/

13

14             The Letters Rogatory Video Hearing of JAIME

15  BLANCO MAYA, as translated by CONSUELO BURRANCA and MARIA

16  KISIC, INTERPRETERS, was held on Thursday, April 19, 2012,

17  commencing at 9:46 a.m., at the Fifth Civil Circuit Court

18  of Bogota, Carrera 9 Number 11-45, Barrio El Centro,

19  Bogota, before The Honorable Manuel Galindo Arguello and

20  Steven Poulakos, Notary Public.

21  REPORTED BY:  Steven Poulakos

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Jaime Blanco Maya
April 19, 2012

Page 6

1  THE COURT: What is your name?

2  THE WITNESS: ID number for the witness is

3  12719347.

4  THE CLERK: Where were you born?

5  THE WITNESS: Valledupar.

6  THE CLERK: Marital status?

7  THE WITNESS: Separated.

8  THE CLERK: At this time you were confined

9  at La Picota?

10  THE WITNESS: Yes.

11  THE CLERK: What type of studies do you

12  have?

13  THE WITNESS: University studies.

14  THE CLERK: Do you have professional?

15  THE WITNESS: Yes, business administration.

16  I want to clarify something about

17  what -- about general information.

18  THE CLERK: About general information?

19  THE WITNESS: Yes.  I said that I am a

20  professional in business administration because of

21  different seminars and courses, those have trained me

Page 7

1  to be such a professional business administration.  But

2  as such I do not have a university diploma that would a

3  credit me.

4  THE COURT: (Speaking Spanish).

5  Let's all please stand.  We're going to

6  administer the oath.  Initially I have swear in the

7  interpreters.

8  Will you faithfully fulfill your

9  commitment to interpret the words or terms in

10  English into Spanish and from Spanish into English

11  with no subjective notion or anything that will

12  affect your interpretation outside from the

13  objective interpreting as such?  So you're asked to

14  swear.

15  MS. KISIC: Yes, Your Honor.

16  MS. BURRANCA: Yes, Your Honor.

17  THE COURT: We need to also swear in the

18  witness.

19  Mr. Blanco, please, approach us.  Mr.

20  Blanco, first of all, you are warned that false

21  testimony in front of the judge is considered -- you

Page 8

1  have the duty to say the truth no matter what, and

2  knowing the responsibility that you assume in front

3  of society, do you swear or promise to tell the

4  truth and only the truth?

5  THE WITNESS: Yes, I swear.

6  THE COURT: As methodology for everything

7  to be as smooth as possible, the Court is only going to

8  assume any type of legality actions in regards to the

9  question.  That is why when the questions are posed by

10  the attorneys it should be very clear so it is recorded

11  appropriately in the record.

12  And I understand that objections are

13  going to be resolved by the pertinent jury

14  additional court in Alabama, jurisdictional court in

15  Alabama; but, however, the judge here, the Court

16  here is going to, in a very subtle way, will make

17  comments about only questions in accordance to

18  legislation and local laws.

19  And it will only be in such way because

20  that is a task for the Court that has jurisdiction

21  in Alabama.  That is why we request, the Court

Page 9

1  requests, from the interpreters that after the

2  question is posed to quickly check it on the

3  computer for its accuracy in regards to the answer

4  that will not be such a case because we will make

5  short summary of it.

6  Thank you so much.  So in order to

7  continue with the proceedings the question is:  If

8  the attorneys are going to be asking -- are going to

9  have freedom in asking the questions are they going

10  to subject themselves to the questions that have

11  been recorded in the documents of the proceeding?

12  MR. COLLINGSWORTH: No, we're going to ask

13  free questions.

14  THE COURT: Perfect.

15  And the Plaintiffs attorney has the

16  floor.

17  MR. COLLINGSWORTH: Thank you, Your Honor,

18  and I would just again, briefly, note for the record

19  the stipulation that I have with Mr. Jeffress that we

20  will reserve our objections to any evidentiary

21  questions as you noted and that only objection to the

Claudia Balcero Giraldo, et al. vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Jaime Blanco Maya
April 19, 2012

Page 10

1 form of the questions will be stated today, but we are
2 not asking Your Honor to resolve any of those
3 objections. Thank you, Your Honor.
4    THE COURT: Thank you.
5    I also wanted to warn the witness that
6 when the question refers to a criminal act, there's
7 no pressure for the witness to answer such
8 questions. The record will not reflect so. That is
9 any type of act that will compromise the witness in
10 regards to criminal issues and that's in agreement
11 with Section 33 of our local constitution.
12    The witness is not obliged to testify
13 against himself in criminal matters or against his
14 family members all the way to the forth degree of
15 blood relationship. Thank you, very much.
16    Sir, your attorney is ready.
17    EXAMINATION BY MR. COLLINGSWORTH:
18 Q  Mr. Blanco, thank you very much for coming
19 today. If I'm not clear in any of my questions,
20 please, stop and say so that the record that we're
21 trying to make here is clear.

Page 11

1 A  Yes, that's fine. I want to clarify
2 something.
3    THE COURT: Is there a question pending?
4 There's no questions, right? There's no questions?
5    THE WITNESS: The clarification is in
6 regards to some general issues.
7    THE COURT: I believe it's important. I
8 believe however -- I believe it's important.
9    THE PROSECUTOR: It's identification.
10    THE COURT: So you can continue, Mr.
11 Blanco.
12    THE WITNESS: At this very moment I'm being
13 judged by Colombian justice. I am being tried by
14 clinic justice because of some crimes, the crime of
15 homicide and also the crime of conspiracy to commit.
16    MR. PROSECUTOR: You have to do it
17 slowly so we are able to put this on the record.
18 You said about trying crimes?
19    THE WITNESS: Related to homicide and
20 conspiracy to commit crimes. I have accepted the crime
21 of conspiracy to commit crimes. I'm awaiting

Page 12

1 sentencing in regards to a crime that is coverup,
2 abetting, which is against administration of justice,
3 but not against life itself.
4    So the people that are involved in that
5 testimony very respectfully I request from you to
6 respect by presumption of innocence that according
7 to constitution I am innocent until there is
8 anything against me. That's the clarification that
9 I wanted to provide to the Court.
10    THE COURT: Very well. Counsel may
11 proceed.
12    MR. COLLINGSWORTH: Thank you.
13    BY MR. COLLINGSWORTH:
14 Q  Mr. Blanco, we certainly want today to just
15 get at the truth. Let me ask you, that since many of
16 the events we're going discuss today go back to the
17 late 1990s or early 2000s, why have you only recently
18 begun talking about your relationship to Drummond and
19 these events that occurred long ago?
20 A  In the penal code we have section 413
21 speaks about some reductions in the penalties and

Page 13

1 within my own defense strategy I recoursed to that law,
2 and, as a matter of fact, I did accept that crime, the
3 crime of conspiracy to commit crimes, aggregated
4 conspiracy to commit crimes, with the purpose to
5 clarify all possible behavior of which the authorities
6 accuse me of and to be able to pay my debt to society
7 and resolve my personal issues.
8    From that moment on I made the decision to
9 tell the authorities everything related with these
10 issues. Today I will, however, refer very stringently
11 to a statement that I signed some months ago, I do not
12 remember, where I'm narrating some event that are real,
13 however, since I am part, and an integrating part, of
14 the collaboration process, efficient collaboration
15 process there shall maybe some questions that I'm not
16 going to be able to answer because such answers are
17 going to prevent me from getting some benefits in the
18 future.
19 Q  Mr. Blanco, I'm going to hand you a
20 document that we have marked as Exhibit 1.
21    (Plaintiffs' Exhibit 1 was marked for

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Jaime Blanco Maya
April 19, 2012

Page 34

1 Bernal Cuellar at the place where I am confined.

2     And then to clarify things here with Dr. --

3 Attorney Linares.  After my arrest my relationship with

4 Attorney Linares was limited to requesting documents

5 asked by the investigating bodies, and Dr. Linares has

6 been very kind in furnishing that for me.

7     BY MR. COLLINGSWORTH:

8 Q  And Doctor --

9     THE COURT: Are you referring to him to the

10 one you're questioning?

11     THE WITNESS: Yes.

12     MR. COLLINGSWORTH: And let us -- let the

13 record reflect, and if we could, I'd like to get a shot

14 of Mr. Linares with the camera --

15     MR. JEFFRESS: Objection, it is not

16 permitted.

17     MR. COLLINGSWORTH: Your Honor, can I

18 take -- can the camera take a shot?

19     MR. JEFFRESS: It's not permitted.  The

20 rules say the camera focuses on the witness.

21     THE COURT: I don't think there's anything

Page 35

1 that would -- the office -- the Court decides that this

2 affects intimacy of the person and denies the request

3 to have the recording made.

4     BY MR. COLLINGSWORTH:

5 Q  Did you tell Mr. Linares, who's seated here

6 and has been seated here the entire time you've been

7 speaking, exactly what you told Mr. Bernal Cuellar

8 about the role of Adkins in the murders of the union

9 leaders?

10     MR. JEFFRESS: Objection, leading.

11     THE WITNESS: No.  No, with Attorney Jose

12 Miguel I was not so very descriptive and so explicit

13 about it.

14     BY MR. COLLINGSWORTH:

15 Q  Let me ask a new question.

16     MR. JEFFRESS: Let him finish his answer,

17 please.

18     MR. COLLINGSWORTH: You've objected to the

19 question as leading, so I'm going to restate the

20 question.

21     MR. JEFFRESS: You didn't like the answer?

Page 36

1     BY MR. COLLINGSWORTH:

2 Q  Tell us what you did tell Mr. Linares about

3 the role of Adkins in the union murders?

4     MR. JEFFRESS: Objection, asked and

5 answered.

6     THE WITNESS: It was roughly just an answer

7 in general terms, very broad terms.  I simply remember

8 that in kind of a funny way I told him, look, this

9 gringo has screwed up and he was the one that

10 coordinated and planned that whole issue.

11     Yes, that must have been about four five

12 years ago.  It's been quite a while already.

13     BY MR. COLLINGSWORTH:

14 Q  When you say gringo again you're referring

15 to Mr. Adkins?

16 A  Yes, that is correct.

17 Q  And the incident you're referring to is the

18 murder of the two union leaders?

19 A  That is correct.

20 Q  What did Mr. Linares say to you during this

21 meeting?

Page 37

1 A  I don't remember what the comments made by

2 Jose Miguel were at that time.  I don't remember.  I

3 don't really don't remember.

4 Q  Was there any plan or strategy discussed

5 about what would happen after this meeting that you had

6 with him?

7 A  With Jose Miguel there was no strategy nor

8 plan or with whom a plan, a strategy was talked about

9 was with Attorney Jaime Bernal Cuellar, but

10 specifically we did not get to any -- nothing specific.

11     What Attorney Jaime as legal advisor had,

12 his interest was that the individual he represented or

13 counseled would not figure as being implied in all of

14 these issues, I mean indicated in these issues.

15     BY MR. COLLINGSWORTH:

16 Q  Who was that?  Who were you referring to?

17 A  In what regard?

18 Q  Who did Dr. Bernal tell you he represented?

19     MR. JEFFRESS: Objection, leading.

20     THE WITNESS: The multi-national Drummond.

21     BY MR. COLLINGSWORTH:

Claudia Balcero Giraldo, et al.  vs.
Drummond Company, Inc., et al.

Letters Rogatory Video Hearing of Jaime Blanco Maya
April 19, 2012

Page 138

BY MR. JEFFRESS:

1  Q   Now, you have -- your trial has concluded,
2  but the judge has not made a decision correct; is that
3  correct?
4  A   It's correct because the charges by which
5  the prosecutor's accuses me of it was that determining
6  factor.  I don't know how translate determining factor
7  in English.
8  Q   Mastermind?
9  A   Mastermind because of the motive of the
10  food during the trial proceeding before the judge I was
11  able to show moreover with documents that were coming
12  from Drummond that such motive did not exist and I
13  testified about my guilt in that subject matter as an
14  accomplice or as a coverup.  So far the judge has not
15  been easy to make a ruling.
16  Q   I don't mean to be impolite to you, Mr.
17  Blanco.  My only question to you was:  Are you awaiting
18  a decision by the judge?  I'm just trying to get
19  through this as quickly as we can.
20  A   Yes, it's correct.

Page 139

1  Q   The judge hasn't ruled yet?
2  A   Has not issued a ruling yet.
3  Q   And if the judge were to find you guilty
4  only of what you admitted --
5  THE COURT:  This is a motion for the
6  record.  The judge wants to know what is the Court that
7  is taking care of your case.
8  THE WITNESS:  11th Judicial Court,
9  Specialized Criminal Court in Bogota with a function of
10  OIT.
11  THE COURT:  OIT functions?
12  THE WITNESS:  Yes.
13  THE COURT:  You don't know what the file --
14  number of the file number.
15  THE WITNESS:  I must have that somewhere
16  here, my file number.  No, no, I do not have the file
17  number.
18  THE COURT:  That's fine.
19  MR. JEFFRESS:  May I continue, Your Honor?
20  THE COURT:  Yes, you may.
21  BY MR. JEFFRESS:

Page 140

1  Q   So if the Court were to find you guilty
2  only of what you admitted, what would your sentence be?
3  THE COURT:  Pardon me?  There's an
4  objection by the Court.  You cannot say that because
5  that's against the constitution.
6  THE PROSECUTOR:  The conviction, the
7  sentencing is only done by the judge how many years
8  and such when it's a criminal case.
9  MR. JEFFRESS:  I see.
10  THE COURT:  You can ask another question.
11  BY MR. JEFFRESS:
12  Q   Let me ask this:  Mr. Charris was convicted
13  of the murders of the same people, correct?
14  A   It is correct.
15  Q   And he received a 30-year sentence,
16  correct?
17  MR. COLLINGSWORTH:  Objection, no
18  foundation.
19  THE WITNESS:  Yes, it's correct.
20  THE PROSECUTOR:  Slower, please.
21  BY MR. JEFFRESS:

Page 141

1  Q   Now, without saying exactly what the
2  sentence would be, do you expect that if the Court
3  finds you guilty of what you've admitted rather than
4  being a mastermind your sentence would be much less
5  than 30 years?
6  MR. COLLINGSWORTH:  Objection, calls for an
7  improper legal conclusion.
8  THE PROSECUTOR:  Excuse me?
9  THE WITNESS:  I refrain from --
10  THE PROSECUTOR:  The --
11  THE COURT:  That question was already
12  rejected.
13  THE CLERK:  Was rejected because it's
14  similar.
15  MR. JEFFRESS:  Because it's similar?
16  THE COURT:  He cannot talk about being
17  convicted or how much is his sentence going to be.
18  Because of the presumption of innocence he cannot
19  anticipate his own sentence.
20  BY MR. JEFFRESS:
21  Q   Mr. Blanco, shortly after your arrest on