UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS
_____/

08-80421-CIV-MARRA
08-80508-CIV-MARRA
10-60573-CIV-MARRA
08-80480-CIV-MARRA
07-60821-CIV-MARRA
_____/

**PLAINTIFFS' RESPONSE TO CHIQUITA'S TIME-SENSITIVE MOTION TO MODIFY REQUESTS FOR JUDICIAL ASSISTANCE**

Chiquita's Motion (DE 855) correctly states that the Plaintiffs[1] do not oppose seeking more time to take the paramilitary depositions in Colombia. Nonetheless, Plaintiffs do not entirely agree with Chiquita's notion of how this is to be accomplished, nor how the depositions should proceed.

Attorney Paul Wolf's response (DE 856) – which appears to be a disguised motion in itself – requires a more complete response. Mr. Wolf's motion is procedurally defective, unsupported by evidence, and seeks relief that Mr. Wolf is not entitled to. Plaintiffs also disagree with Mr. Wolf's proposals for how the depositions should proceed.

Finally, in order to proceed safely and effectively with respect to these paramilitaries, it is necessary for the Court to impose some degree of confidentiality on the proceedings. In particular,

---

[1] For purposes of this filing, "Plaintiffs" refers to Plaintiffs and their counsel in all cases except those represented by Paul Wolf. As set forth below, Terrence Collingsworth and his co-counsel have consented to being excluded from proceedings concerning these paramilitary witness depositions.

1

the names of the attendants at the depositions and any logistical details should not be publicly disclosed, through filings in this Court or otherwise. And, if Plaintiffs are in any way to coordinate with Mr. Wolf, confidentiality of those work product communications must also be guaranteed.

## I.   The depositions should proceed on August 12, and as efficiently as possible.

### A.   The depositions should proceed on August 12.

Both Chiquita and Mr. Wolf suggest that the Court should be open to rescheduling the August 12 examination date. Plaintiffs disagree. It has already taken several months to schedule this single day, and the evidence that the paramilitaries may soon be released has not changed. The Court should clearly communicate to the Colombian court that the August 12 date should be maintained, or we risk losing this opportunity entirely. From conversations with the clerk of the court in Colombia, Plaintiffs understand that that court already had to rearrange its schedule to provide this one day of deposition. *See* Declaration of Marco Simons ("Simons Decl.") ¶ 2. Rescheduling from August 12 would undermine the purpose of the letters of request for judicial assistance and risk losing these witnesses.

### B.   The depositions should proceed with English translation.

Plaintiffs agree with Chiquita that the depositions should proceed with contemporaneous English translation. Mr. Wolf's proposal to proceed only in Spanish may be standard in Colombia, where Spanish is the customary language. But this is not a Colombian lawsuit. This lawsuit is pending in U.S. court, where English must be used. *See, e.g.*, 28 U.S.C. §§ 1827 & 1865. We have taken depositions in various countries around the world. The attorneys always ask questions in English, with translation into the deponent's native language as necessary. If the deponent speaks a language other than English, those responses are translated so the court reporter may create an English-language transcript, which is the official record of the testimony. Simons Decl. ¶ 7.

Plaintiffs will not comment on the language abilities or experience of the attorneys who will

be present at the deposition, because – as set forth below – identifying these attorneys in any way is potentially a risk to their safety. Of course, Plaintiffs' counsel have the ability to do legal work in Spanish and experience interviewing witnesses, and Mr. Wolf's suggestion otherwise – "Simons' team also lacks personal experience interviewing clients affected by the BEC, and insist on taking Mr. Rendon Herrera's deposition in English, presumably because they are not able to do so on Spanish" – is utterly unsupported and unfounded.

Nonetheless, the Court was right to require English translation for these depositions. The testimony will ultimately be submitted in court in English, and so an English transcript is essential. That transcript will be much more clear if the attorneys are asking questions in English.

### C. The presence of a Colombian judge is unnecessary for the attorneys' examination.

Colombian procedure ordinarily calls for a judge to do an examination. But the Hague Convention specifically allows the requesting judge to ask for special procedures:

> The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed.
>
> However, **it will follow a request of the requesting authority that a special method or procedure be followed**, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (March 18, 1970) art. 9 (emphasis added). While Plaintiffs agree that the Colombian judge should be present to swear in the witnesses and ask the questions in the letters, we believe that – to the extent that the Colombian court is willing to allow the attorneys' examination to proceed without the judge's presence, and if this would allow the examination to proceed more efficiently and allow more time for examination – this Court should indicate that the judge's presence should not be required.

Chiquita maintains that it wants adequate time to cross-examine the witnesses. Chiquita also argues the judge must be present to "penalize a witness who refuses to answer questions or abide by

applicable procedural rules," and "to adjudicate any objections under Colombian law and preserve objections under U.S. law." DE 858 at 3. But the clerk of the Colombian court has already indicated that they have very little time available, and that no more dates around August 12 are available, Simons Decl. ¶¶ 2-3 – making it more difficult to obtain adequate time if the judge's presence is required. The clerk has also indicated that the Colombian judge does not intend to rule on any objections. *Id.* ¶ 4. And while it would be nice to have a judge present at every deposition to make sure witnesses follow the rules, that is not considered necessary for any deposition in the United States, so it should not be considered a necessity here; the Colombian court is already being generous with its time without supervising six days of attorneys' examinations.

To be clear, Plaintiffs do not **oppose** the presence of the Colombian judge; rather, Plaintiffs believe that this Court should make it clear that, from its perspective, the presence of the Colombian judge is not **required**.

## II. "Witness payment" discovery should not delay these examinations.

### A. Plaintiffs have no objection to completion of any discovery before August 12, but this has no bearing on these witnesses.

Plaintiffs have already made their submissions to the Court regarding the so-called "witness payment" discovery, discovery which has shown that there have been no payments, offers, or proposed payments to any of these paramilitary witnesses. While Plaintiffs have no objection to completing that discovery – should further discovery be ordered – prior to August 12, there is no reason to delay the depositions if the discovery is not completed.

Neither Chiquita nor Mr. Wolf has made any suggestion that any of the outstanding discovery disputes have any bearing on these witnesses. All Plaintiffs' counsel have stated unequivocally that no payments have been made or offered to any of these witnesses. *See, e.g.*, DE 807 at 8 (Collingsworth); DE 772-1 at 11-12 (New Jersey); DE 769 at 4 (Scarola). Thus the "witness payment" discovery is a red herring in this context.

The only actual allegations of any payments to any paramilitaries – again, not these paramilitaries – relate to Mr. Collingsworth and his co-counsel. Out of an abundance of caution, Plaintiffs' counsel have agreed with Mr. Collingsworth and his co-counsel that they should be excluded from participation in these examinations.

Thus, while Plaintiffs have no objection to resolving these discovery disputes, any lack of resolution should not delay the Colombian examinations.

### B. Mr. Wolf's accusations of incompleteness are unfounded.

Mr. Wolf makes several sensational accusations of malfeasance on the part of Plaintiffs' counsel – for example, he suggests that the undersigned counsel "had not even searched for responsive materials, but only made objections to what [Mr. Wolf] had produced, and maintains that this is all that is required of him." DE 856 at 6. This is unsupported by any evidence, and is simply false.

Mr. Wolf states that the email list maintained by Plaintiffs' counsel in this case "should be searched for keywords such as witness names, and Mr. Simons and the others should produce any documents relevant to payment to them." DE 856 at 7. In fact, Plaintiffs' counsel did search the email list for a variety of keywords. Simons Decl. ¶ 8. Plaintiffs' counsel also searched their own email files as well. *Id.* Counsel then reviewed all resulting documents to determine if they were relevant, and if they were, either produced them or entered them on their privilege log, as appropriate. *Id.* ¶ 9. Mr. Wolf has no personal knowledge of the steps that Plaintiffs' counsel took to undertake a reasonable and diligent search.

Nor is it the case that Plaintiffs' counsel have taken the position that they need only object to Mr. Wolf's production of documents, which included numerous work product materials created by Plaintiffs' counsel, as well as references to confidential discussions and plainly irrelevant documents. *See* DE 809. Plaintiffs' counsel conducted their own reasonable and diligent searches.

5

Mr. Wolf also states that the undersigned counsel has "asserted [Mr. Wolf's] own privilege, which I have obviously waived, for a series of emails to the chiquita-ats-all listserve." DE 856 at 6. While Plaintiffs have been careful to assert work product protection unless a basis for waiver is clear, Mr. Wolf's privilege was not the basis of any documents withheld. Nonetheless, many of the documents authored by Mr. Wolf incorporate, refer to, or comment upon the confidential work product of other attorneys. *See, e.g.*, DE 809 at 3 (privilege log indicating that documents authored by Mr. Wolf incorporate other counsels' work product).

Most outlandishly, Mr. Wolf refers to some unspecified "RICO conspiracy" among Plaintiffs' counsel, which he "complained about . . . in various emails until I was removed from the group." DE 856 at 7. Again, there is no evidentiary support for this allegation. As far as Plaintiffs' counsel can tell, Mr. Wolf raised the issue of witness payments or alleged witness payments in exactly three emails to the list – the first on July 1, 2011, and the last two on July 19, 2011. Simons Decl. ¶¶ 11-13. Mr. Wolf continued to discuss the issue of particular paramilitary witnesses after this point, without any mention of any alleged payment scheme. For example, in an email to the list on July 28, 2011, Mr. Wolf referred to Raul Hasbún's recent testimony in Colombia, with no mention of any concerns. *Id*. ¶ 14. In another email to the group on April 2, 2012, Mr. Wolf mentioned three paramilitaries as potential witnesses – "Raul Hasbun, El Aleman [Freddy Rendón Herrera], and Carlos Tijeras [Jose Gregorio Mangones Lugo]" – without mentioning any concerns about any alleged payment scheme. *Id*. Mr. Wolf remained on the list until October 6, 2012, when he was removed by the consensus of the group due to his refusal to agree to a joint decision-making procedure for the coordinated cases. *Id*. ¶ 21.

Mr. Wolf's behavior was completely inconsistent with any notion that he had concerns about any sort of conspiracy. On October 5, 2011, Terrence Collingsworth emailed the list relating to a proposed deposition of Mangones (Carlos Tijeras). Simons Decl. ¶ 17. Mr. Wolf did not respond to

6

this email at all. *Id.* When the email was recirculated a month later in reference to Chiquita's first *forum non conveniens* (FNC) motion, Mr. Wolf responded regarding FNC, but said nothing about Mangones. *Id.* ¶ 18. Mr. Wolf then sent the undersigned counsel two emails directly, not shared with the list, with his thoughts about FNC – again without raising any concerns related to Mangones. *Id.* ¶ 19. On August 26, 2012, Mr. Collingsworth again sent an email to the list relating to proposed letters rogatory for Mangones. *Id.* ¶ 20. Mr. Wolf did not respond to this at all. *Id.*

Although Mr. Wolf now states "I also recall expressing my concerns about José Gregorio Mangones Lugo, who is one of the witnesses is subject to the Request for Judicial Assistance at hand," Plaintiffs' counsel have searched the list archive for all emails from Mr. Wolf that mention "Mangones" or "Tijeras," and have found no such expression of concern. *Id.* ¶¶ 14-16. Indeed, aside from the discussions in July 2011 – which were not produced in discovery because they related to the ethics and propriety of reimbursing various costs and fees to fact witnesses[2] – there was no discussion on the list of anything relating to witness payments before Mr. Wolf was removed; the issue did not arise again until October 2013, when it was raised in the context of Mr. Collingsworth's alleged actions in the *Drummond* matter. *See, e.g.,* DE 782 Ex. A (privilege log indicating no responsive documents between July 19, 2011, and October 8, 2013); Simons Decl ¶ 10.

If there were any conspiracy, it existed only in Mr. Wolf's head – and he never expressed his concerns to the other Plaintiffs' counsel. There is no basis to credit Mr. Wolf's accusations that Plaintiffs' counsel have not conducted a reasonable and diligent search for documents.

III. **Paul Wolf's motion is improper and should be denied.**

   A. **The request to participate and to join in the motion to compel are procedurally improper.**

---

[2] In its May 5, 2015, Order, the Court held that Plaintiffs were not required to produce "documents concerning the *propriety* of payments by, on behalf of, or at the request of plaintiff's counsel for the benefit of any witness." DE 797 at 3.

Mr. Wolf has asked to participate and ask questions in the paramilitary examinations. Aside from the merits of this request, it is procedurally improper. Mr. Wolf has not filed a motion. Nor has Mr. Wolf filed a proposed order, nor proposed revised letters of request. Mr. Wolf's filing, which is replete with factual assertions, is unsupported by any evidence – no declarations or exhibits. His filing repeatedly simply makes assertions about which Mr. Wolf has no knowledge.

Mr. Wolf also belatedly seeks to join Chiquita's Motion to Compel (DE 837). Again, this is improper, for two reasons. First, Mr. Wolf has no right to compel this discovery; the Court ordered Plaintiffs to produce discovery to Chiquita, not Mr. Wolf, who did not propound any discovery requests. Second, Mr. Wolf has not pursued this discovery; he never met and conferred over any alleged deficiencies in Plaintiffs' responses, and cannot now simply join a motion to compel.

### B.  Mr. Wolf has no separate right to participate in these examinations.

Mr. Wolf did not file or join in any request to issue the letters of request. Ordinarily, a plaintiff who does not notice a deposition does not simply get to ask questions in another plaintiff's deposition, and this proceeding should be no different. Furthermore, the letters as issued indicate that the Plaintiffs should be "permitted to conduct oral examination by a single designated liaison counsel for all plaintiffs' groups." *See, e.g.*, DE 789 (Roldan letter) at 14. This suggests that the Plaintiffs should come to an agreement among themselves as to who should take the examination.

Indeed, all Plaintiffs' counsel except Mr. Wolf have come to such an agreement, and have consensus on the counsel that will be taking the examinations. Simons Decl. ¶ 5. That consensus should control. Mr. Wolf's refusal to coordinate should not entitle him to greater privileges than other Plaintiffs' counsel.

### C.  If time is limited, any time granted to Mr. Wolf should be taken from Chiquita's time, not Plaintiffs'.

Mr. Wolf has indicated that he considers himself to be "adverse" to the remainder of the Plaintiffs, and that he wishes to "cross-examine," not examine, one of the witnesses. Simons Decl. ¶

8

6. This makes him more aligned with Chiquita than with Plaintiffs. Thus, to the extent that time is limited, any time for Mr. Wolf's cross-examination should be taken from Chiquita's time.

If Mr. Wolf wants to coordinate with other Plaintiff's counsel, accept group decisions, and keep internal strategy discussions confidential, he is free to participate just as all other Plaintiffs' counsel may participate. In that case, the Court should order that Mr. Wolf must keep discussions with other Plaintiffs' counsel confidential; in the past he has disclosed such discussions to opposing counsel. Simons Decl. ¶ 22. Mr. Wolf should also share in the financial costs of the depositions; Plaintiffs' counsel are paying for the court reporter, as well as for their interpreters at the deposition, *see, e.g.*, DE 789 (Roldan letter) at 15, and these costs should be shared equally. If, however, Mr. Wolf wants to set himself up as "adverse" to the Plaintiffs, and "cross-examine" their witnesses, he should be treated as an adversary.

## IV. The Court should take steps to protect the safety and the security of those participating in the examinations.

Given the ongoing insecurity in Colombia, continued threats from paramilitaries, and widespread endangerment of human rights lawyers in Colombia, Plaintiffs believe that the Court should take steps to protect the safety and security of those participating in the examinations.

Most importantly, the Court should require that 1) the identities of the participants in the depositions, and 2) any logistical information concerning the depositions or participants' travel, not be filed publicly or disclosed beyond the counsel in this case.

Furthermore, the Court should take additional measures to ensure that unwanted and potentially dangerous attention is not focused on these proceedings. While the witnesses, date and place of the depositions has already been disclosed in publicly available filings, participants in the depositions should not make any further public disclosures of this information until the examinations have concluded, and while in Colombia should not disclose to anyone the purpose of their visit. We believe that this is common sense, but Mr. Wolf, for example, has been routinely

9

posting information about the depositions on his Facebook page, *see* Simons Decl. ¶ 23 & Ex. 1, as well as posting information about his own travels, *see* Simons Decl. ¶¶ 25-27 & Ex. 2, and even commentary about these paramilitaries, *see* Simons Decl. ¶ 29 & Ex. 3, and we do not trust that he will take appropriate measures to keep participants safe.

For the foregoing reasons, Plaintiffs do not oppose Chiquita's request for more time, but respectfully request that Plaintiffs' alternate proposals concerning the conduct of these depositions, reflected in the proposed Amended Letters of Request attached hereto as Exhibits A-C, and the Proposed Order submitted herewith, be granted.

Dated: July 30, 2015                    Respectfully submitted,

/s/ Marco Simons
Marco Simons
Richard Herz
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

John de Leon, FL Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez & De Leon, P.A.**
1399 SW 1st Avenue, #202
Miami, FL 33120
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Paul L. Hoffman
**Schonbrun, Desimone, Seplow,**

10

**Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-365-7260

**Counsel for John Doe I et al., Case No. 08-80421-CIV-MARRA**

James K. Green, FL Bar No. 229466
**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
William B. King, FL Bar No. 181773
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

**Counsel for Jose and Josefa Lopez Nos. 1 through 342, Case No. 08-80508-CIV-MARRA**

Jonathan C. Reiter
**Law Firm of Jonathan C. Reiter**
350 Fifth Avenue, Suite 2811
New York, NY 10118
Tel: 212-736-0979

11

Fax: 212-268-5297

Ronald S. Guralnick, FL Bar No. 111476
**Ronald Guralnick, P.A.**
Bank of America Tower at International Place
100 S.E. 2d Street, Suite 3300
Miami, FL 33131
Tel: 305-373-0066
Fax: 305-373-1387

**Counsel for Plaintiffs Juan/Juana Does 1-888, Case No. 08-80480-CIV-MARRA**

Sigrid S. McCawley
**Boies, Schiller & Flexner LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: 954-356-0011
Fax: 954-356-0022

Stephen N. Zack
**Boies, Schiller & Flexner LLP**
100 S.E. Second St., Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

Karen C. Dyer
**Boies, Schiller & Flexner LLP**
121 South Orange Ave., Suite 840
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047
Nicholas A. Gravante Jr.
Lee S. Wolosky
**Boies, Schiller & Flexner LLP**
575 Lexington Ave., 7th Floor
New York, NY 10022
Tel: 212-446-2300
Fax: 212-446-2350

**Counsel for Plaintiffs Angela Maria Henao Montes, et al., Case No. 10-60573-CIV-MARRA**

William J. Wichmann
Attorney at Law

888 S.E. 3rd Avenue, Suite 400
Fort Lauderdale FL 33316
Tel: 954-522-8999
Fax: 954-449-6332

**Counsel for Plaintiffs Antonio Gonzalez Carrizosa, et. al., Case No. 07-60821-CIV-MARRA**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on July 30, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008, Joint Counsel List filed in accordance with the CMO.

By: /s/ John DeLeon

JOHN DELEON