**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 08-01916-MD-MARRA**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

       07-60821-CIV-MARRA
       08-80421-CIV-MARRA
       08-80465-CIV-MARRA
       08-80508-CIV-MARRA
       10-60573-CIV-MARRA
_____/

**JOINT REPLY TO PLAINTIFFS' OPPOSITION TO**
**INDIVIDUAL DEFENDANTS' JOINT CONSOLIDATED**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.     THE *DOES 1-144* AND *DOES 1-11* CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2). ............................. 3

        A.    The *Does 1-144* Plaintiffs Cannot Base Personal Jurisdiction On a Meeting With the Department of Justice in D.C. ...................................... 3

        B.    Chiquita's Place of Incorporation Does Not Establish Personal Jurisdiction Over the Individual Defendants in New Jersey. ...................................... 5

        C.    The Court Must Dismiss Any Claims Over Which There is No Jurisdiction. ..................................................................................... 7

II.    PLAINTIFFS' TVPA CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST ADEQUATE AND AVAILABLE REMEDIES IN COLOMBIA. ............. 10

III.   CERTAIN TVPA CLAIMS MUST ALSO BE DISMISSED AS UNTIMELY. ............. 14

IV.   PLAINTIFFS' TVPA CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM. .......................................................................................... 15

V.    PLAINTIFFS' ATS AND STATE LAW CLAIMS MUST BE DISMISSED ON EXTRATERRITORIALITY GROUNDS. ........................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adhikari v. Daoud & Partners*,
  697 F. Supp. 2d 674 (S.D. Tex. 2009) ............................................................14, 15

*Andes Industries, Inc. v. Chen Sun Lan*,
  2014 WL 6611227 (D. Nev. Nov. 19, 2014) .............................................................6

*Arce v. Garcia*,
  434 F.3d 1254 (11th Cir. 2006) .............................................................................14

*Arista Records, Inc. v. Flea World, Inc.*,
  2006 WL 842883 (D.N.J. Mar. 31, 2006).................................................................16

*In re Asbestos Prod. Liab. Litig.*,
  965 F. Supp. 2d 612 (E.D. Pa. 2013) ......................................................................8

*Balcero v. Drummond Co. Inc.*,
  No. 2:09-cv-1041, DE 275 (Jan. 17. 2012).............................................................15

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
  572 F.3d 1271 (11th Cir. 2009) .............................................................................11

*Chavez v. Carranza*,
  559 F.3d 486 (6th Cir. 2009) ................................................................................14

*Clay v. AIG Aerospace Ins. Servs. Inc.*,
  61 F. Supp. 1255 (M.D. Fla. 2014)...........................................................................9

*Del. Prof'l Ins. Co. v. Hajjar*,
  55 F. Supp. 3d 537, 542 (D. Del. 2014)....................................................................7

*Doe v. Drummond*,
  782 F.3d 576 (11th Cir. 2015) .........................................................3, 17, 18, 20

*Doe v. Saravia*,
  348 F. Supp. 2d 1112 (E.D. Cal 2004).....................................................................15

*Escarria-Montano v. United States*,
  797 F. Supp. 2d 21 (D.D.C. 2011) .........................................................................11

*First Trenton Indem. Co. v. River Imaging*,
  2004 WL 3316874 (N.J. Super. Ct. Law Div. Mar 22, 2004) ...............................4, 7

*Grimm v. City of Boca Raton,*
    2015 WL 4483974 (S.D. Fla. July 22, 2015) (Marra, J.)......................................16

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) ...............................................................17, 18

*Hanson v. Denckla,*
    357 U.S. 235 (1958)............................................................................6

*Healthcare Ventures, LLC v. Ornstein,*
    2014 WL 235594 (D. Colo. Jan. 22, 2014)...............................................6

*Hilao v. Estate of Marcos,*
    103 F.3d 767 (9th Cir. 1996) ............................................................15

*Indian Lake Club v. Hainsworth,*
    212 So.2d 915 (Fla. Dis. Ct. App. 1968) .............................................7

*Int'l Business Machines Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.,*
    666 N.E. 2d 866 (Ill. App. Ct. 1996) ................................................7

*Investment Co. Institute v. United States,*
    550 F. Supp. 1213 (D.D.C. 1982)......................................................4

*ITT Base Servs. v. Hickson,*
    155 F.3d 1271 (11th Cir. 1998) .......................................................9

*Jean v. Dorelien,*
    431 F.3d 776 (11th Cir. 2005) ....................................................12, 15

*Jung v. Ass'n of Am. Medical Colleges,*
    300 F. Supp. 2d (D.D.C. 2004)........................................................4

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
    115 F.3d 1020 (D.C. Cir. 1997)....................................................4, 5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
    523 U.S. 26 (1998)...................................................................... *passim*

*LG Display Co. v. Obayashi Seikou Co.,*
    919 F. Supp. 2d 17 (D.D.C. 2013) ...................................................4

*Lizarbe v. Rondon,*
    642 F. Supp. 2d 473 (D. Md. 2009)................................................15

*Mamani v. Berzain,*
    21 F. Supp. 3d 1353, 1364 (S.D. Fla. 2014) ....................................11

*Mamani v. Berzain,*
    654 F.3d 1148 (11th Cir. 2011) ...........................................................................19

*Naartex Consulting Corp. v. Watt,*
    722 F.2d 779 (D.C. Cir. 1983) ...............................................................................5

*Oldfield v. Pueblo de Bahia Lora,*
    558 F.3d 1210 (11th Cir. 2009) ..............................................................................5

*In re Palm Beach Fin. Partners, L.P.,*
    517 B.R. 310 (Bankr. S.D. Fla. 2013) ..................................................................17

*In re Papst Licensing GMBH & Co. KG Litig.,*
    590 F. Supp. 2d 94 (D.D.C. 2008) ......................................................................10

*Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,*
    831 F.2d 522 (4th Cir. 1987) ................................................................................7

*Pomerance v. Armstrong,*
    1979 WL 2701 (Del. Ch. July 17, 1979) ...............................................................6

*Prosecutor v. Delalic,*
    Case No. IT-96-21-A (ICTY Appeals Chamber, Feb. 20, 2001) ...........................20

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.,*
    579 F. App'x 779 (11th Cir. 2014) .....................................................................10

*Rojas Mamani v. Sanchez Berzain,*
    636 F. Supp. 2d 1326 (S.D. Fla. 2009) ...............................................................11

*Schmitz v. Xiqing Diao,*
    2013 WL 5965882 (D. Wyo. Nov. 7, 2013) ..........................................................6

*Second Amendment Found. v. U.S. Conference of Mayors,*
    274 F.3d 521 (D.C. Cir. 2001) .........................................................................4, 5

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) ...............................................................................................6

*Shah v. Pan American World Services, Inc.,*
    148 F.3d 84 (2d Cir. 1998) .................................................................................8, 9

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,*
    257 F. Supp. 2d 717 (S.D.N.Y. 2003) ..................................................................8

*In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig.,*
    113 F.3d 1484 (8th Cir. 1997) .............................................................................17

*Tsang Mun Ting v. Silve Dragon Res. Inc.*,
   2015 WL 3551871 (Del. Super. Ct. June 3, 2015 ) ................................................7

*United States v. Bank of New England, N.A.*,
   821 F.2d 844 (1st Cir. 1987)................................................................................16

*United States v. Ferrara*,
   54 F.3d 825 (D.C. Cir. 1995)..................................................................................4

*In re W. Caribbean Crew Members*,
   632 F. Supp. 2d 1193 (S.D. Fla. 2009) ..............................................................2, 12

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
   2010 WL 2539728 (D. Nev. June 4, 2010)............................................................8

*World Skating Fed'n v. Int'l Skating Union*,
   357 F. Supp. 2d 661 (S.D.N.Y. 2005)....................................................................9

**Statutes**

10 Del. C. § 3114 ....................................................................................................6

28 U.S.C. § 1404(a) ................................................................................................8

28 U.S.C. § 1406 .................................................................................................2, 7

28 U.S.C. § 1407 .................................................................................................7, 8

28 U.S.C. § 1631 .................................................................................................2, 7

D.C. Code § 13-423(a)(1) ....................................................................................3, 4

**Other Authorities**

Restatement (Second) of Torts § 876, cmt. d........................................................18

Verity Winship, *Jurisdiction Over Corporate Officers and the Incoherence of Implied Consent*,
   2013 U. ILL. L. REV. 1171, 1183 n.82 (2013) ..........................................................6

Wright & Miller, 8 FED. PRAC. & PROC. CIV. § 2008.3 (3d ed.) ..................................10

## INTRODUCTION

In Spring 2012, Plaintiffs' counsel sought to amend their complaints to name the Individual Defendants as parties for the first time.  Plaintiffs' counsel acknowledged that this maneuver was motivated by the Supreme Court's ruling a few weeks earlier that only individuals, and not corporations such as Chiquita, can be liable under the TVPA.  Keeping some sort of TVPA claim in these cases was critical to counsel's bid to avoid FNC dismissal, given that this Court had already (i) dismissed Plaintiffs' state law claims, (ii) certified an interlocutory appeal of the court's ruling on Chiquita's motion to dismiss their ATS claims, and (iii) stated that it might be more inclined to grant Chiquita's FNC motion if, following that appeal, only claims under Colombian law remained.  (*See* Individual Defs.' Joint Consolidated Mot. to Dismiss Pls.' Am. Compls. at 4-5 (D.E. 735) (the "Joint Motion," cited herein as "Joint Mot.").)

Given this reason for hastily naming the Individual Defendants, it is unsurprising that Plaintiffs' counsel paid little heed to the fact that, with few exceptions, the Individual Defendants are not subject to personal jurisdiction in the districts where these cases were filed.  None of the eight Individual Defendants sued in D.C. or the six sued in New Jersey lives in those jurisdictions, and none of Plaintiffs' claims against them arise from any acts committed there. Plaintiffs now attempt to argue that personal jurisdiction can be based on a meeting with DOJ in D.C. or on defendants' status as officers and directors of a New Jersey corporation, but courts uniformly hold that neither one of these is a permissible basis for jurisdiction.

Plaintiffs ask the Court to remedy these personal jurisdiction defects by transferring the cases to a district in which they could have been brought, to then be returned to this Court for centralized MDL proceedings.  But the Supreme Court has expressly held that an MDL transferee court lacks the power to transfer cases. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-36 (1998).  Plaintiffs cite a handful of cases in which MDL

transferee courts, apparently unaware of *Lexecon* and without objection by any party, transferred cases under §§ 1406 and 1631, as they would in a non-MDL proceeding. But they identify no case in which an MDL transferee court took note of *Lexecon* and then engaged in such an *ultra vires* transfer anyway, as Plaintiffs ask the Court to do here.

Given counsel's reasons for quickly adding these claims, it is equally unsurprising that Plaintiffs' counsel took no steps to first exhaust remedies against the Individual Defendants in Colombia, as the TVPA requires. Plaintiffs' counsel now offer a series of post-hoc justifications for this failure, but they are frivolous on their face. For example, counsel argues that Plaintiffs could not have sued the Individual Defendants in Colombia before this year, because only now (in connection with Chiquita's motion to dismiss for *forum non conveniens* (the "FNC Motion")) have the Individual Defendants indicated that they would not object to the exercise of jurisdiction in Colombia. Plaintiffs' counsel cite no authority for this assertion, because there is none: as courts in this district have noted, Colombian courts have personal jurisdiction over a foreign defendant for any allegedly wrongful act committed in Colombia or committed abroad with effects in Colombia. *See In re W. Caribbean Crew Members*, 632 F. Supp. 2d 1193, 1199-1200 (S.D. Fla. 2009). Plaintiffs could have sued the Individual Defendants in Colombia at any time.

Finally, it is likewise unsurprising that Plaintiffs were unable to allege any specific individualized facts in support of their TVPA claims against the Individual Defendants. Plaintiffs repeatedly intone that their complaints make specific, particularized allegations. But, as detailed below and in the supplemental reply briefs filed by the Individual Defendants, Plaintiffs' opposition brief impermissibly relies on allegations against *Chiquita*, conclusory assertions, and, in some cases, outright mischaracterizations of their own complaints. Plaintiffs

do not remotely allege facts sufficient to support their claims that the Individual Defendants

aided and abetted and conspired to have thousands of Colombian civilians tortured and killed.

The Individual Defendants acknowledge that the Eleventh Circuit's recent decision in

*Doe v. Drummond*, 782 F.3d 576 (11th Cir. 2015), issued on March 25, moots Chiquita's

arguments that the TVPA does not apply extraterritorially or allow for secondary liability.  But

nothing in *Drummond* changes the fact that there is no personal jurisdiction over the eight

Individual Defendants who were sued in either the D.C. or New Jersey actions; that the TVPA

claims must be dismissed for failure to exhaust remedies in Colombia; and that the complaints

irresponsibly assert thousands of claims for torture and extrajudicial killing against the Individual

Defendants without pleading a single non-conclusory fact to support them.[1]

## ARGUMENT

I.   **THE *DOES 1-144* AND *DOES 1-11* CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(b)(2).**

A.   **The *Does 1-144* Plaintiffs Cannot Base Personal Jurisdiction On a Meeting With the Department of Justice in D.C.**

The *Does 1-144* Plaintiffs argue that the Individual Defendants are subject to personal

jurisdiction under D.C. Code § 13-423(a)(1) because their claims arise out of the Defendants'

"transacting . . . business in [D.C.]"  (*See* Pls.' Opp'n to Joint Mot. (June 22, 2015) (D.E. 826)

(hereinafter "Opp. Br.").)  To support this argument, Plaintiffs rely on the theory of "conspiracy

---

[1] The Court should disregard Attorney Paul Wolf's brief in opposition to the Individual Defendants' Joint Motion to Dismiss, purportedly on behalf of the Doe Plaintiffs in Case Nos. 08-80465, 10-80652, 11-80404, 11-80405, and 13-80146.  (*See* D.E. 820.)  Mr. Wolf does not even appear to represent the plaintiffs in Case No. 08-80465.  (*See* D.E. 824 at 1, n.1.)  With respect to the other cases, in which Mr. Wolf represents various Doe Plaintiffs (the "Wolf Plaintiffs"), none of the Wolf Plaintiffs has asserted a claim against any of the Individual Defendants, and the Joint Motion does not address any of the Wolf Plaintiffs' claims.  In any event, Mr. Wolf's opposition brief raises the same arguments as the above-captioned Plaintiffs' opposition; to the extent the Court considers them, they should be rejected for the same reasons.

jurisdiction," pursuant to which "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'" and "coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) (quoting D.C. Code § 13–423(a)(1)). To establish jurisdiction under this theory, Plaintiffs must "plead with particularity," *inter alia*, an overt act taken in furtherance of the conspiracy within the forum's boundaries. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997). Plaintiffs claim they have met this requirement based on a single allegation: that Defendants Hills and Olson attended a meeting with the Department of Justice ("DOJ") on April 24, 2003, at which they expressed the view "that the law did not require Chiquita to stop making the payments," while DOJ officials allegedly stated that "the 'payments to the AUC were illegal and could not continue.'" (Opp. Br. 37.) This allegation fails to sustain Plaintiffs' argument for conspiracy jurisdiction for two independent reasons.

*First*, the alleged statements to DOJ by Hills and Olson cannot be considered in the jurisdictional analysis because under the well-established "government contacts" exception to D.C.'s long-arm statute, "contact with a federal instrumentality located in the District [of Columbia] will not give rise to personal jurisdiction." *United States v. Ferrara,* 54 F.3d 825, 831 (D.C. Cir. 1995); *see also LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 27 (D.D.C. 2013) ("Stated simply, a party's contacts with government agencies do not enter the jurisdictional calculus."), *reconsideration denied*, 292 F.R.D. 1 (D.D.C. 2013); *Jung v. Ass'n of Am. Medical Colleges*, 300 F. Supp. 2d, 119, 139 (D.D.C. 2004) (contacts with federal government agencies in D.C. "are excluded from the jurisdictional analysis"); *Investment Co. Institute v. United States*, 550 F. Supp. 1213, 1216-17 (D.D.C. 1982) (exception applies to

business activities involving exchange of information with government).  This is true even if the communications with the government were allegedly made as part of an unlawful scheme that gave rise to Plaintiffs' claims.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (appearances before Department of Interior to influence the agency as part of defendants' fraudulent scheme did not give rise to personal jurisdiction in D.C.).[2]

*Second*, even if the communications with DOJ could be considered in the jurisdictional analysis, Plaintiffs do not explain how voluntarily meeting with DOJ to *disclose* Chiquita's payments to the AUC *furthered* the defendants' alleged conspiracy to "fund[ ]the AUC."  (Opp. Br. 37.)  In addition, a forum-state contact cannot establish personal jurisdiction unless it is a "'but-for' cause of the tort."  *Oldfield v. Pueblo de Bahia Lora*, 558 F.3d 1210, 1222-23 (11th Cir. 2009).  Chiquita's disclosure to DOJ is clearly not a but-for cause of any Plaintiff's injuries.

### B.     Chiquita's Place of Incorporation Does Not Establish Personal Jurisdiction Over the Individual Defendants in New Jersey.

The *Does 1-11* Plaintiffs do not contend that their claims arise out of any actions by Chiquita or the Individual Defendants that took place in or were directed at New Jersey.  They argue instead that New Jersey has personal jurisdiction over the Individual Defendants based solely on the fact that they were officers and directors of a New Jersey corporation, the activities of which gave rise to Plaintiffs' claims.  The Supreme Court has rejected that very argument and Plaintiffs offer no reason why this Court could reach a different conclusion here.

---

[2] Although D.C. courts have not had occasion to apply the government contacts exception in the specific context of an assertion of conspiracy jurisdiction, an assertion of conspiracy jurisdiction must fail where, as here, the court may not consider the overt act alleged to support personal jurisdiction as part of its jurisdictional analysis.  *See Jungquist*, 115 F.3d at 1031 (rejecting claim of conspiracy jurisdiction where the only actions alleged to have occurred in the District in furtherance of the conspiracy were either protected by the Foreign Sovereign Immunities Act or lacked evidentiary support).

In *Shaffer v. Heitner*, 433 U.S. 186 (1977), a nonresident shareholder of a Delaware corporation brought a shareholder's derivative suit in Delaware against officers and directors for corporate activities that they undertook in Oregon. *See id.* at 189. The Court expressly rejected plaintiff's argument that, although he could not "identify any act related to his cause of action as having taken place in Delaware," the defendants' "positions as directors and officers of a corporation chartered in Delaware" was sufficient to confer personal jurisdiction. *Id.* at 213-14. As the Court explained, the act of holding corporate office, without more, "does not demonstrate that [officers and directors] have 'purposefully availed themselves of the privilege of conducting activities within the forum State' in a way that would justify bringing them before a Delaware tribunal." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[3]

Relying on *Shaffer*, courts have consistently rejected the exercise of personal jurisdiction over an individual based solely on his role as an officer, director, or shareholder of a business chartered in the forum.[4] None of the cases cited by the Plaintiffs is to the contrary; in all of them—including the only case from a New Jersey court—the court had specific jurisdiction over corporate directors or officers because the claims arose out of the corporation's or the

---

[3] The Court also expressly noted that Delaware had not "enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State" and the defendants therefore "had no reason to expect to be haled before a Delaware court." *Shaffer*, 433 U.S. at 216. Following *Shaffer*, a number of states, including Delaware, subsequently did enact such laws. *See* 10 Del. C. § 3114 (1977); *Pomerance v. Armstrong*, 1979 WL 2701, at *1 (Del. Ch. July 17, 1979) (upholding Delaware's "recently enacted" director consent statute). New Jersey has not. *See* Verity Winship, *Jurisdiction Over Corporate Officers and the Incoherence of Implied Consent*, 2013 U. ILL. L. REV. 1171, 1183 n.82 (2013) ("Fifteen states explicitly list directors or officers and directors in their long-arm statutes," New Jersey not among them).

[4] *See Andes Industries, Inc. v. Chen Sun Lan*, 2014 WL 6611227, *5-7 (D. Nev. Nov. 19, 2014); *Healthcare Ventures, LLC v. Ornstein*, 2014 WL 235594, at *1 (D. Colo. Jan. 22, 2014); *Schmitz v. Xiqing Diao*, 2013 WL 5965882, at *9-11 (D. Wyo. Nov. 7, 2013).

6

individuals' *activities within, or directed at, the forum state*.[5]  Here, although Chiquita was

incorporated in New Jersey, its headquarters and principal place of business during the relevant

time period were in Ohio; the defendants' allegedly wrongful actions were directed at Colombia;

and there is no allegation that any defendant performed any act giving rise to Plaintiffs' claims in

New Jersey.  Thus, there is no basis for personal jurisdiction in New Jersey.

### C.    The Court Must Dismiss Any Claims Over Which There is No Jurisdiction.

Plaintiffs' counsel urge the court to transfer their claims against the Individual

Defendants under 28 U.S.C. §§ 1406 and 1631 rather than dismissing them upon a finding of no

personal jurisdiction.  Plaintiffs contend that "[b]ecause a court overseeing multi-district

litigation has the same authority as the original transferor courts, it likewise has the authority to

transfer claims to any district court that has jurisdiction over them." (Opp. Br. 33 (citations

omitted).)  That is simply not true.  Under the plain text of the MDL statute, 28 U.S.C. § 1407, as

well as clear Supreme Court precedent, MDL courts lack the authority to directly transfer an

action that originated in another district court.  In *Lexecon Inc. v. Milberg Weiss Bershad Hynes*

---

[5] *See First Trenton Indem. Co. v. River Imaging*, 2004 WL 3316874, at *9-11 (N.J. Super. Ct. Law Div. Mar. 22, 2004) (jurisdiction over nonresident officer of a corporation that had its principal place of business in New Jersey, conducted the overwhelming majority of its business in New Jersey, and committed tortious acts in New Jersey); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) (jurisdiction over nonresident corporate officers of a company that conducted business exclusively within the forum on grounds that "so long as the defendant has purposefully directed his activities toward the forum State, *and the litigation arises from those activities*, due process is satisfied") (emphasis added); *Del. Prof'l Ins. Co. v. Hajjar*, 55 F. Supp. 3d 537, 542 (D. Del. 2014) (jurisdiction over nonresident director on claims of breach of fiduciary duty relating to activities within the forum state); *Tsang Mun Ting v. Silve Dragon Res. Inc.*, 2015 WL 3551871, at *3-4 (Del. Super. Ct. June 3, 2015 ) (jurisdiction over corporate director for claims of fraud and fraudulent transfer targeted at Delaware corporation); *Int'l Business Machines Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.*, 666 N.E. 2d 866, 869-70 (Ill. App. Ct. 1996) (jurisdiction over director of corporation with its principal place of business in the forum on claims of tortious activity committed in the forum); *Indian Lake Club v. Hainsworth*, 212 So.2d 915, 916 (Fla. Dis. Ct. App. 1968) (jurisdiction over officer and directors in a matter arising out of land development trust in the forum).

& *Lerach*, the Supreme Court held that an MDL court did not have the power to transfer a case

pursuant to 28 U.S.C. § 1404(a), because the language of Section 1407 "unconditional[ly]

command[s]" that any transfer actions be taken solely by the Judicial Panel on Multidistrict

Litigation.  523 U.S. 26, 34-36 (1998).

"Although *Lexecon's* holding applies explicitly only to § 1404(a)—the only statute under

which the transferee district court in that case purported to transfer venue—*Lexecon's* reasoning

applies equally to transfers pursuant to any venue statute."  *Shah v. Pan American World

Services, Inc.*, 148 F.3d 84, 90-91 (2d Cir. 1998); *see also In re Asbestos Prod. Liab. Litig.*, 965

F. Supp. 2d 612, 618, 622 (E.D. Pa. 2013) (dismissing, rather than transferring, case for lack of

personal jurisdiction because *Lexecon* does not "leave room for the MDL transferee court to

transfer MDL cases to other districts directly"); David F. Herr, Annotated Manual for Complex

Litigation 4th ed. § 20.132, at 265 n. 666 (Thomson Reuters 2014) (noting that it follows from

*Lexecon* that "an MDL transferee judge . . . may not transfer under Section 1406").[6]

Plaintiffs cite a handful of cases in which MDL transferee courts, apparently unaware of

*Lexecon* and without objection by any party, transferred cases under § 1406, as they would in a

non-MDL proceeding.  (*See* Opp. Br. 33-34.)  None of these cases holds that the transfer is

permissible under *Lexecon*.  In fact, the case on which Plaintiffs most heavily rely—*In re Ski

Train Fire in Kaprun*, *Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717 (S.D.N.Y. 2003)—lacks

any precedential value because it conflicts with binding Second Circuit precedent prohibiting

---

[6] Plaintiffs state that *In re Asbestos* "misapplied *Lexecon*," but offer no support for this assertion.
(Opp. Br. 34 n.27.)  Plaintiffs also attempt to rely on *In re Western States Wholesale Natural Gas
Antitrust Litig.*, 2010 WL 2539728 (D. Nev. June 4, 2010) for the proposition that *Lexecon* does
not bar an MDL court from transferring a case to cure jurisdictional defects (Opp. Br. 34 n.28),
but that court held precisely the opposite.  *See In re Western* at *6 (Section 1407 is an
"unconditional command" that "trumps discretionary transfers under . . . § 1406(a)").

"transfers pursuant to any venue statute" by an MDL court.   *Shah*, 148 F.3d at 90-91.   In any

event, where, as in the cases cited by Plaintiffs, no party objects to the transfer, it is not clear that

there is any remedy for an improper transfer.   But under *Lexecon*, if the Court were to

improperly transfer these actions over the Individual Defendants' objections, the remedy would

be vacatur of any resulting adverse judgment.   *Lexecon*, 523 U.S. at 41-43.

Even if this Court had authority to transfer these actions, it would not be appropriate to

do so because any jurisdictional deficiencies are a consequence of Plaintiffs' own strategic

choice.   *See World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 667 (S.D.N.Y.

2005) (transfer "should not be a panacea for lawyers who bring suits in jurisdictions where they

know or should know that they do not belong").   Here, all relevant information concerning the

Individual Defendants' domiciles and place of business was publicly available and known to the

Plaintiffs, as were all potential jurisdictional objections, prior to their suing the Individual

Defendants.   Plaintiffs could have readily asserted their claims against the Individual Defendants

in the forums where they resided or where the alleged conduct giving rise to Plaintiffs' claims

occurred (and then sought transfer to this MDL).   But that would not have served counsel's

purposes, because they wanted these claims added to the existing complaints against Chiquita, to

use in arguing against Chiquita's then-pending motion to dismiss those cases for FNC.[7]

---

[7] Plaintiffs argue that transfer is appropriate where, as here, some of their claims may be time-barred upon re-filing.   (*See* Opp. Br. 35-36.)   But the cases they cite confirm that this is only true where the plaintiff had a good-faith basis for filing in the wrong district.   *See ITT Base Servs. v. Hickson*, 155 F.3d 1271, 1276 (11th Cir. 1998) (transfer warranted where agency review board instructed the petitioner to file its appeal in the wrong court); *Clay v. AIG Aerospace Ins. Servs. Inc.*, 61 F. Supp. 1255, 1271-72 n.6 (M.D. Fla. 2014) (allowing transfer where plaintiffs' assertion of jurisdiction in Florida was not unreasonable, as "a good deal of the allegedly tortious conduct attributable to the [defendants] reached Florida").   Furthermore, to the extent that Plaintiffs' claims would be time-barred, this would only put them in the same position they would have been in had they filed their claims in the correct forum in the first place.   By adding their claims against the Individual Defendants to the existing actions—five years after they were (continued…)

As a last resort, Plaintiffs ask the Court to delay dismissal of their claims until they have taken jurisdictional discovery.  But such discovery is unwarranted where "the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction" and the "proposed discovery seems unlikely to shed light on the jurisdictional question."  Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008.3 (3d ed.); *see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790-91 (11th Cir. 2014) (affirming denial of jurisdictional discovery where the jurisdictional question "does not require any additional findings of fact"); *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008) ("Without even a colorable allegation" that the defendant maintained sufficient minimum contacts with the forum, "[the plaintiff] has made no showing to support a need for jurisdictional discovery").  Here, the complaints alone conclusively establish that Plaintiffs cannot rely on specific personal jurisdiction because their claims are not based on alleged misconduct in, or directed at, D.C. or New Jersey.  And Plaintiffs have not even tried to make a showing that discovery could reveal contacts between a defendant and the forum states sufficient to support general jurisdiction.

## II.   PLAINTIFFS' TVPA CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST ADEQUATE AND AVAILABLE REMEDIES IN COLOMBIA.

The TVPA states in no uncertain terms: "A court *shall decline to hear a claim* under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  TVPA § 2(b) (emphasis added).  By requiring plaintiffs to exhaust local remedies, Congress established that the TVPA is a fallback remedy

---

initially filed—Plaintiffs sought to preserve certain statute of limitations arguments, such as "relation back," that would have been unavailable if they had filed in the correct district.  (*See* D.E. 823.)  Even if this Court had the power to transfer, which it clearly does not, Plaintiffs would not be entitled to a transfer to preserve a tactical advantage that they sought to secure by knowingly filing their claims in the wrong forum.

available only when plaintiffs are unable to sue elsewhere.  *See Rojas Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1332 (S.D. Fla. 2009).

Plaintiffs do not dispute that failure to exhaust local remedies is a threshold question that courts can and often do resolve on a motion to dismiss.  *See id.* at 1331-32 (granting motion to dismiss because failure to exhaust "prevents a court from reaching the merits of a TVPA claim"); *Escarria-Montano v. United States*, 797 F. Supp. 2d 21, 25 (D.D.C. 2011) (dismissing TVPA claims on exhaustion grounds).  Nor do Plaintiffs dispute that in resolving whether a plaintiff has exhausted adequate and available remedies, courts are "free to weigh the facts" extrinsic to the complaint without being "constrained to view them in the light most favorable to the plaintiff." *See Mamani v. Berzain*, 21 F. Supp. 3d 1353, 1364 (S.D. Fla. 2014) (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)).

Here, Plaintiffs' counsel have conceded that they asserted claims against the Individual Defendants in a rushed response to the Supreme Court's *Mohamad* decision.  (*See* Joint Mot. 5.) Their failure to first seek to pursue their claims in Colombia was thus a result of counsel's desire to promptly file the claims in the U.S.—not any supposed lack of available remedies in Colombia.  In their opposition brief, counsel now offer various after-the-fact rationalizations for failing to even attempt to exhaust remedies in Colombia.  All of them fail.

Plaintiffs first argue that the Colombian forum was unavailable until this year because "the Individual Defendants had not agreed that they would be subject to the jurisdiction of the Colombian courts at the time Plaintiffs brought their claims."  (Opp. Br. 7.)  But Plaintiffs do not cite any authority for the proposition that personal jurisdiction in Colombia depends on the proactive consent of the defendants, because they know that it does not.  As courts in this district have recognized, Colombian courts have personal jurisdiction over a foreign defendant for any

allegedly wrongful act committed in Colombia or committed abroad if the acts have effects in

Colombia. *See In re W. Caribbean Crew Members*, 632 F. Supp. 2d at 1199-1200; (*see also*

Tamayo Decl. ¶¶ 24-27 (D.E. 741-1)). Such jurisdiction clearly would extend to American

corporate executives alleged to have facilitated payments to paramilitary groups that committed

tortious acts in Colombia. (Tamayo Decl. ¶¶ 25-27.) Indeed, Plaintiffs' own Colombian law

expert does not dispute this point. (*See* Arrubla Decl. ¶¶ 16-17 (D.E. 823-6).)

　　　　Plaintiffs also contend that Colombian remedies were unavailable because "those seeking

to challenge official or paramilitary violence, including prosecutors and prominent human rights

activists are at great risk of retaliation." (Opp. Br. 7.) On this issue, Plaintiffs assert that the

Defendants bear the burden to show the absence of a security threat, but that is incorrect: "once

the defendant makes a showing of remedies abroad which have not been exhausted, the burden

shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable,

unduly prolonged, inadequate or obviously futile." *Jean v. Dorelien*, 431 F.3d 776, 782 (11th

Cir. 2005) (quoting S. Rep. No. 102-249, at 9-10); (*see also* D.E. 899 at 5-10).

　　　　Plaintiffs make no such showing here. First*,* their generalized allegations of retaliation

by paramilitaries against "prosecutors and human rights activists," even if true, are insufficient to

show that *these plaintiffs* could not have pursued effective remedies against *these defendants*.

(FNC Motion (D.E. 741) at 41-46.) Here, the defendants are not the Colombian paramilitaries

whom Plaintiffs claim to fear. And to the extent Plaintiffs contend they face a risk of violent

retaliation for suing Chiquita and the Individual Defendants, Plaintiffs do not even attempt to

explain how that risk is greater if Plaintiffs bring their claims in Colombia—where neither

Chiquita nor any of the Individual Defendants is present—than in the United States, where many

hundreds of Colombian Plaintiffs have been suing openly, in their own names, for years.

Nor can Plaintiffs fall back on their argument in opposition to the FNC Motion that Chiquita's purported "impleader strategy" might pit Plaintiffs against paramilitaries (Opp'n to FNC Motion (D.E. 832) at 19-20.)  Perhaps Plaintiffs could have demonstrated exhaustion if they had sued defendants in Colombia, defendants had impleaded a dangerous third party, and then Plaintiffs abandoned suit in Colombia to file claims in the United States.  But the exhaustion requirement would be a dead letter if Plaintiffs could avoid it simply by postulating hypotheticals about litigation strategies a defendant *might* deploy that *might* render the local remedy ineffective.

More fundamentally, Plaintiffs' stated fear of retaliation if they openly pursue claims in Colombia is belied by the facts.  Many of them have publicly pursued their claims against Chiquita for years.  Plaintiffs' counsel have openly advertised meetings to recruit plaintiffs in Colombia.  And Plaintiffs' counsel are now coordinating their discovery efforts with the very paramilitaries whom they claim to fear.  (*See* FNC Motion at 42.)  Plaintiffs also do not dispute that approximately 1,700 named Colombians have filed mediation demands against Chiquita in Colombia for its alleged role in aiding the violent acts of Colombian paramilitaries, and that thousands of Colombians have confronted former paramilitaries through the Justice and Peace Process—with no indication that any of them has suffered as a result.  Plaintiffs argue in response that none of the civil proceedings initiated against Chiquita in Colombia has progressed beyond the mediation stage, and that the Individual Defendants are not subject to the Justice and Peace Process.  (Opp. Br. 8.)  But this misses the point.  The issue is not whether Plaintiffs could have already secured a remedy against the defendants through these proceedings.  Rather, that many hundreds of Colombians have openly confronted former paramilitaries for their crimes and asserted claims against Chiquita and Colombian government entities *in Colombia* shows that

13

pursuing this litigation there would not pose such safety risks for Plaintiffs as to render the remedies in Colombia unavailable.[8]

Most importantly, however, Plaintiffs have not made a showing that local remedies are unavailable for the simple reason that none of them has offered a declaration telling the Court that they think that to be the case. That these cases are large should not obscure that the relevant actors here are the Plaintiffs—not their lawyers. Counsel cannot assert TVPA claims and sidestep the statute's exhaustion requirement without offering any actual evidence that *any* Plaintiff has a well-founded belief that he or she cannot pursue claims in Colombia.

## III.   CERTAIN TVPA CLAIMS MUST ALSO BE DISMISSED AS UNTIMELY.

Plaintiffs' conclusory argument that the civil conflict in Colombia tolled the TVPA's 10-year limitations period (Opp. Br. 11-12) fails because they have not alleged any facts suggesting that the civil conflict actually prevented them from investigating and bringing their claims. *See Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 695 (S.D. Tex. 2009) (denying equitable tolling where plaintiffs "allege no facts which suggest that this war had direct and significant impact on the ability of litigants to bring civil claims, particularly against an American company with no connections to the fighting"). The cases cited by Plaintiffs are distinguishable because all but one involve claims against individuals directly affiliated with an authoritarian regime that had the power to prevent the plaintiffs from bringing their claims any sooner.[9]   Here, by contrast,

---

[8] Plaintiffs also make the nonsensical argument that they need not seek relief in Colombia unless the Individual Defendants can point to a prior judgment entered against them in Colombia and enforced. (Opp. Br. 9.) Plaintiffs' supporting cases hold only that exhaustion is unnecessary if a judgment rendered in the local forum would not be enforceable. Plaintiffs do not dispute that Colombian judgments are ordinarily enforceable, either in Colombia or in the U.S.

[9] *See, e.g., Chavez v. Carranza*, 559 F.3d 486, 493-94 (6th Cir. 2009) (claims against former Salvadoran military officer where plaintiffs and their families feared reprisals from Salvadoran military); *Arce v. Garcia*, 434 F.3d 1254, 1264-65 (11th Cir. 2006) (claims against former (continued...)

14

Plaintiffs have failed to allege any facts showing why Colombians could assert their rights against paramilitaries in Colombia's Justice-and-Peace Process, but were prevented from asserting claims against the former American executives of an American company that sold its Colombian subsidiary in 2004.  *See Adhikari*, 697 F. Supp. 2d at 695.  The only other case cited by Plaintiffs involved allegations that a defendant corporation had collaborated with paramilitaries in retaliating against civilians who sought to hold the paramilitary organization accountable.  Mem. Op. & Order 6, *Balcero v. Drummond Co. Inc.*, No. 2:09-cv-1041, DE 275 (Jan. 17. 2012) (permitting equitable tolling where the AUC "with the support of the Drummond defendants, used violent reprisals against anyone who sought to hold them accountable for the terror imposed on the civilian population").  Plaintiffs have made no such allegation against any of the Individual Defendants (or Chiquita).

## IV.   PLAINTIFFS' TVPA CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiffs' argument that they have adequately pled their TVPA secondary liability claims (Opp. Br. 13-28) relies almost entirely on a mixture of (1) allegations against *Chiquita*, as though the company's conduct over a 20-year period can be imputed to anyone who was an officer or director at some point during that period, (2) allegations that impermissibly lump multiple defendants together, and (3) boilerplate, conclusory statements that each and every defendant

---

leaders of Salvadoran military regime that remained in power and "remained intent on maintaining its power at any cost and acted with impunity to do so"); *Jean v. Dorelien*, 431 F.3d 776 (11th Cir. 2005) (claims against former colonel in Haitian army until the defendant was removed from power); *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (claims against former Philippine dictator Ferdinand Marcos until the Marcos regime left power); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 482 (D. Md. 2009) (claims against former Peruvian army officer where government in power defended armed forces against the very allegations at issue); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1147-48 (E.D. Cal 2004) (claims against former Salvadoran paramilitary security chief where evidence showed that anyone "who leveled allegations against active or former members of the Salvadoran military risked reprisal").

"reviewed and approved payments" and "knew the AUC was a violent organization." (Opp. Br. 14, 19, 28.) This is plainly at odds with the requirement that plaintiffs must support their claims with allegations that are *factual* and *individualized*. (Joint Mot. 26-28.)

Plaintiffs repeatedly argue that the Individual Defendants shared Chiquita's *mens rea*, but they cannot rely on allegations regarding *Chiquita's* knowledge or intent to establish the required *mens rea* for any Individual Defendant. Plaintiffs must allege some link between Chiquita's intent and the individuals whom they have sued. (Joint Mot. 32-33.) Due to the compartmentalized structure of many large corporations, a corporation may be held liable for its alleged knowledge or intent, even if the *mens rea* cannot be established with respect to any single employee. *See United States v. Bank of New England, N.A.,* 821 F.2d 844, 856-57 (1st Cir. 1987). For that reason, although the *mens rea* of individuals acting on a corporation's behalf may be imputed to the corporation, the converse is not true. A corporation's *mens rea* cannot be imputed to each officer, director, or employee. *See Arista Records, Inc. v. Flea World*, *Inc.*, 2006 WL 842883, at *18 (D.N.J. Mar. 31, 2006) (individuals "are not imputed to enjoy the same knowledge as their corporations . . . by their status as corporate officers or owners."); (*see also* Joint Mot. 32-33).

As explained below and in the Individual Defendants' supplemental replies, Plaintiffs' few individualized factual allegations are wholly insufficient to state a claim under the TVPA.[10] Because Plaintiffs cannot, consistent with their ethical obligations, make the required allegations at all, their TVPA claims against the Individual Defendants must be dismissed with prejudice. *See Grimm v. City of Boca Raton*, 2015 WL 4483974, at *8 (S.D. Fla. July 22, 2015) (Marra, J.).

---

[10] As with the Individual Defendants' opening brief, this section of the joint reply brief will address legal arguments common to all defendants. The Individual Defendants' supplemental reply briefs will address particular allegations made against each defendant.

*Plaintiffs fail to adequately plead aiding and abetting liability.* After the Joint Motion was filed, the Eleventh Circuit held that, to sustain a secondary liability claim under the TVPA, Plaintiffs must allege facts showing that that particular defendant knowingly and substantially assisted the principal violation. *See Doe v. Drummond*, 782 F.3d 576, 608 (11th Cir. 2015). To satisfy the knowledge standard, Plaintiffs must allege more than the defendants' knowledge of the "general presence of the AUC and the AUC's violent methods." *Id*. at 604-05. They must allege that each defendant had actual knowledge that he was assisting the wrongful conduct that is specifically alleged in the complaint—here the torture and killing of Colombian civilians in Colombia's banana-growing regions. (*See* Op. & Order (June 3, 2011) (D.E. 412) ("MTD Order") at 69.) Plaintiffs' complaints assert, at most, that some defendants knew the AUC was a "violent paramilitary organization," but not that they knew the AUC was *torturing and killing civilians*. Indeed, the complaints allege that the AUC was a quasi-military organization formed to engage in violence against *armed guerilla groups* as part of a civil war. (*E.g.*, D.E. 589 ¶¶ 37-43.)

To sustain their aiding and abetting claims as to any Individual Defendant, Plaintiffs also must allege that that particular defendant, by himself, provided substantial assistance to the AUC. To qualify as "substantial," a defendant's assistance must be "integral to the wrongful [conduct]," *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983), and the "proximate cause" of the underlying harm, *In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir. 1997). To determine whether the defendant's assistance was integral, the Court must consider how the specific assistance provided by any single defendant compares to the overall scope of wrongful conduct alleged. *See In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 349 (Bankr. S.D. Fla. 2013) (holding that substantial assistance will not be

found where "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme"); Restatement (Second) of Torts § 876, cmt. d ("The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other."). As detailed in the defendant-specific briefs, Plaintiffs fail to identify any assistance provided by any defendant that was more than minor relative to the alleged multi-decade pattern of tortious conduct committed by the AUC. Indeed, Plaintiffs do not cite a *single* case in which an *individual* has been held liable as an aider and abettor for financing, on his company's behalf, tortious conduct.[11] In addition, other factors, such as the defendants' lack of presence at the commission of the torts and the lack of a superior-subordinate relationship with the AUC's members, weigh against a finding of substantial assistance. *See Halberstam*, 705 F.2d at 484.

**Plaintiffs fail to adequately plead conspiracy liability.** Plaintiffs argue they have pled the requisite *mens rea* to support their conspiracy claims by vaguely alleging that the Individual Defendants intended to secure the AUC's services to "control the banana-growing regions." (Opp. Br. 17.) But this argument is foreclosed by the law of the case. The Court has already held that Plaintiffs must allege that the defendants entered into an agreement with the AUC *with the purpose or intent to torture and kill Colombian civilians*. (*See* MTD Order 68.)[12]

Apparently recognizing this, Plaintiffs argue in the alternative that their allegations of Chiquita's corporate intent, which the Court previously found sufficient to sustain a claim

---

[11] Plaintiffs cite certain Anti-Terrorism Act cases to suggest that providing funds is *per se* "substantial assistance." (Opp. Br. 15-16.) The cases are inapposite because they involve large banks and charities providing a level of financing that dwarfs the assistance that any Individual Defendant allegedly provided, and was truly integral to the tortfeasor's scheme.

[12] *Drummond* confirms that the standard of conspiracy liability applied by this Court in its Order on Chiquita's motion to dismiss was correct. *Drummond* holds that domestic law secondary liability standards govern TVPA claims (*id.* at 607-608), and the conspiracy liability standard the Court adopted was consistent with the domestic law standard articulated in *Cabello v. Fernandez-Larios*, 402 F.3d 1148 (11th Cir. 2005) (MTD Order 67).

against the *company*, suffice to show that the *Individual Defendants* intended that the AUC kill

and torture Colombian civilians.  However, the complaints are devoid of any non-conclusory

allegations connecting any Individual Defendant to the specific allegations of corporate

misconduct on which the Court relied in regards to Chiquita's corporate intent.  Absent

allegations suggesting that any defendant actually intended to assist the AUC's violence against

civilians—and did not act out of a genuine desire to protect the company's employees from

retaliation, an "obvious alternative explanation"—Plaintiffs' complaints establish, at best, a mere

"possibility" that the defendants acted with the requisite intent, and are therefore insufficient to

state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mamani v. Berzain*, 654 F.3d

1148, 1153 (11th Cir. 2011).[13]

       **Plaintiffs fail to adequately plead agency liability.**  This Court previously dismissed

Plaintiffs' agency-based claims against Chiquita because Plaintiffs failed to allege that Chiquita

exercised control over the AUC.  (*See* MTD Order 82.)  Plaintiffs' agency claims against the

Individual Defendants must likewise be dismissed because they have not alleged that any

Individual Defendant exercised any greater degree of control over the AUC than Chiquita did.

       Plaintiffs do not contend otherwise.  Instead, they argue that the Individual Defendants

exercised control not over the AUC, but rather over *other Chiquita employees* who facilitated

payments to the AUC.  (Opp. Br. 25-26.)  This argument fails because the underlying violation

---

[13] Plaintiffs erroneously contend that *Iqbal* "credited an alternative explanation only where plaintiffs pled no facts that would permit the explanations they advanced." (Opp. Br. 23.)  Not so.  In *Iqbal*, the Court acknowledged that the plaintiffs' allegations were "consistent with" purposeful discrimination, but dismissed the claims because of the "obvious alternative explanation." *Id.* at 681.

Plaintiffs also assert that the Court concluded that Plaintiffs' allegations, taken as true, did not support *Chiquita's* affirmative defense of duress on a motion to dismiss.  (Opp. Br. 22.)  Even if it were true, it is irrelevant.  Fear of retaliation is an alternative explanation for the *Individual Defendants'* alleged conduct and negates the existence of the requisite *mens rea*.

of the TVPA for which Plaintiffs seek to hold the Individual Defendants secondarily liable are the violent acts *committed by the AUC*, not various acts undertaken by other Chiquita employees to facilitate payments. Although Plaintiffs argue that the command responsibility doctrine may apply to superiors of other aiders and abettors (Opp. Br. 26), the Eleventh Circuit rejected this tertiary liability theory in *Drummond*. *See Drummond*, 782 F.3d at 610 ("Proof is required that the superior has effective control *over the persons committing the violations of international humanitarian law in question*.") (emphasis added), n.48 (Plaintiffs failed to show that individual corporate officers had effective control over the AUC).[14]

## V.   PLAINTIFFS' ATS AND STATE LAW CLAIMS MUST BE DISMISSED ON EXTRATERRITORIALITY GROUNDS.

Plaintiffs do not dispute that their ATS claims must be dismissed on extraterritoriality grounds. With respect to their state-law claims, Plaintiffs ask the Court to defer dismissal until this Court has conducted a choice-of-law analysis. (Opp. Br. 32.) But the Court already found that no choice-of-law analysis was required in dismissing the identical state-law claims against Chiquita, and denied Plaintiffs' motion for reconsideration of that ruling. (MTD Order 86-89.)

## CONCLUSION

Pursuant to Rule 12, the Court should dismiss in full the claims against the Individual Defendants.[15] To the extent any claims are not dismissed under Rule 12, the Court should dismiss them for the reasons set forth in Chiquita's FNC Motion.

---

[14] Even if such a theory were viable, Plaintiffs have not alleged that any defendant exercised the degree of control over the AUC or anyone else necessary to establish command responsibility, which must be "similar to that of military commanders." *Prosecutor v. Delalic*, Case No. IT-96-21-A ¶ 197 (ICTY Appeals Chamber, Feb. 20, 2001).

[15] The Individual Defendants rely on their separate reply brief, filed concurrently, in support of their argument that the *Does 1-144* Plaintiffs' Colombian law claims should be dismissed as time-barred and rest on their opening brief for their argument that all Plaintiffs' Colombian law claims should be dismissed for failure to state a claim (Joint Mot. 37-39).

Dated: August 21, 2015

Respectfully submitted,

John E. Hall
Shankar Duraiswamy
José E. Arvelo
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001
Telephone: (202) 662-6000
Fax: (202) 662-6291

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone:  (212) 841-1000
Fax:  (212) 841-1010

/s/ James C. Gavigan, Jr.
Sidney A. Stubbs (Fla. Bar No. 095596)
sstubbs@jonesfoster.com
Robert W. Wilkins (Fla. Bar No. 578721)
rwilkins@jonesfoster.com
James C. Gavigan, Jr. (Fla. Bar No. 0085909)
jgavigan@jonesfoster.com
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Telephone: (561) 659-3000
Facsimile: (561) 650-5300

*Counsel for Chiquita Brands International, Inc., Chiquita Fresh North America, LLC, and Fernando Aguirre*

Michael G. Austin (FBN 457205)
michael.austin@dlapiper.com
Ardith Bronson (FBN 423025)
ardith.bronson@dlapiper.com
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Phone: (305) 423-8500
Fax: (305) 503-9583

*Counsel for Cyrus Freidheim and Robert Kistinger*

David S. Krakoff (*pro hac vice*)
dkrakoff@buckleysandler.com
James T. Parkinson (*pro hac vice*)
jparkinson@buckleysandler.com
BUCKLEYSANDLER LLP
1250 24th Street, N.W., Suite 700
Washington, D.C. 20037
Telephone:  (202) 349-8000
Fax:  (202) 349-8080

21

L. Louis Mrachek (Fla. Bar No. 182880)
lmrachek@mrachek-law.com
MRACHEK, FITZGERALD, ROSE,
KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler Drive, Suite 600
West Palm Beach, Florida 33401
Telephone: (561) 655-2250
Fax: (561) 655-5537

*Attorneys for Defendant Charles Keiser*

J. Michael Burman, Esq. (FBN: 136214)
Bernard A. Lebedeker, Esq. (FBN:
42950)
REID BURMAN LEBEDEKER
222 Lakeview Ave., Suite 1160
West Palm Beach, FL 33401
561-659-7700 (telephone)
561-659-6377 (fax)
jmb@reidburmanlaw.com
bal@reidburmanlaw.com

*Counsel for Keith Lindner and Steven
Warshaw*

Jeffrey A. Neiman
(Florida Bar Number 544469)
MARCUS NEIMAN & RASHBAUM
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Tel: (954) 462-1200
Fax: (954) 688-2492
jneiman@mnrlawfirm.com

Elissa J. Preheim
(pro hac vice motion pending)
R. Stanton Jones
(pro hac vice motion pending)
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 952-5999
elissa.preheim@aporter.com

stanton.jones@aporter.com

*Counsel for Defendant Robert Olson*

John B. T. Murray, Jr. (Fla. Bar. No.
962759)
jb.murray@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
Telephone: 561.650.7213
Facsimile: 561.655.1509

*Attorney for Defendant William Tsacalis*

<u>**CERTIFICATE OF SERVICE**</u>

   I HEREBY CERTIFY that I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF on this 21st day of August, 2015.  I also certify that the

foregoing document is being served this day on all counsel of record registered to receive

electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the

Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed

in accordance with the CMO.


        By: /s/ James C. Gavigan, Jr.
          Fla. Bar No. 0085909
          jgavigan@jonesfoster.com