**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 08-01916-MD-MARRA/JOHNSON**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS
_____/

08-80421-CIV-MARRA
08-80465-CIV-MARRA
08-80480-CIV-MARRA
08-80508-CIV-MARRA
10-80652-CIV-MARRA
11-80404-CIV-MARRA
11-80405-CIV-MARRA
_____/

**PLAINTIFFS' MOTION TO ENFORCE COURT ORDER WITH**
**RESPECT TO ATTORNEY PAUL WOLF, AND FOR SANCTIONS;**
**<u>SUPPORTING MEMORANDUM OF LAW</u>**

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

I.     INTRODUCTION.................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................... 2

.

       A. Mr. Wolf failed to abide by the Court's order concerning
          Amended Letters of Request, and made unauthorized disclosures
          to opposing counsel.................................................................... 2

          1.   *The Court's Orders concerning the Colombian depositions*.................... 2

          2.   *Mr. Wolf's participation in the Roldán deposition* .............................. 3

          3.   *Mr. Wolf's refusal to abide by cost-sharing and confidentiality*.............. 4

       B. Mr. Wolf's pattern of disclosure of confidential work product
          communications......................................................................... 6

          1.   *It has long been necessary for MDL plaintiffs' counsel to engage in
               confidential coordination* ...................................................... 6

          2.   *Mr. Wolf's conflicts with Plaintiffs' counsel and eventual exclusion from
               group communications* ........................................................ 9

          3.   *Mr. Wolf's disclosures of MDL work product*................................. 10

III.   ARGUMENT ...................................................................................... 12

       A. Mr. Wolf repeatedly violated multiple elements of this Court's
          Order ..................................................................................... 12

       B. Mr. Wolf's disclosure of MDL Plaintiffs' work product violated
          his own agreement, the ethical obligation of confidentiality and his
          obligation to cooperate in the court-mandated MDL.................... 13

       C. The Court has authority to enforce its orders and police those
          appearing before it.................................................................... 16

IV.    CONCLUSION AND REMEDIES SOUGHT ................................. 17

V.     STATEMENT PURSUANT TO LOCAL RULE 7.1(a)(3)............... 18

## TABLE OF AUTHORITIES

<u>Cases</u>

*Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203 (Tenn. Ct. App. 2002)...............15 n.1

*Castel v. Sangamo Weston, Inc.*, 744 F.2d 1464 (11th Cir. 1984)..................14

*Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985) .......................16

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*,
    902 F.2d 244 (4th Cir. 1990) ..........................14

*John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers*,
    913 F.2d 544 (8th Cir. 1990) ..........................14

*Jones v. Graham*, 709 F.2d 1457 (11th Cir. 1983)........................16

*Martin v. Automobili Lamborghini Exclusive, Inc.*,
    307 F.3d 1332 (11th Cir. 2002)..........................17

*Mitsui Sumitomo Ins. Co. v. Carbel, LLC*,
    No. 09-21208-CIV, 2011 WL 2682958 (S.D. Fla. July 11, 2011) ..............14

*Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21 (N.D. Ill. 1980) .......................14

*Peacock v. Merrill*, No. CA 05-0377-BH-C,
    2008 WL 762103 (S.D. Ala. Mar. 19, 2008)..................16

*Perez v. Clearwater Paper Co.*,
    No. 13-cv-00461, 2015 WL 685331 (D. Idaho. Feb. 17, 2015).................14

*Power Mosfet Techs. v. Siemens A.G.*, 206 F.R.D. 422 (E.D. Tex. 2000)...............15 n.1

*In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996)...............................15

*Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015)......................17

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980)......................14

*United States v. BDO Seidman, LLP*, 492 F.3d 806 (7th Cir. 2007) ...........................14

*United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21 (D.D.C. 2002)...................14

*In re Walker*, 532 F.3d 1304 (11th Cir. 2008)............................17

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) ........16

**<u>Other Authorities</u>**

Erichson, Howard M., "Informal Aggregation: Procedural and Ethical
    Implications of Coordination Among Counsel in Related Lawsuits,"
    50 Duke L.J. 381 (November 2000) ............................................................. 13

Restatement (Third) of the Law Governing Lawyers § 76, cmt. g. (2000) ............ 14

Restatement (Third) of the Law Governing Lawyers § 126 cmt. c
    (Proposed Final Draft No. 1, 1996) .............................................................. 15

8 Wright & Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2008) ....................... 15

## I.      INTRODUCTION

Paul Wolf, counsel for the plaintiffs in Nos. 08-80465, No. 10-80652, No. 11-80404, No. 11-80405, has violated this Court's Order dated August 3, 2015, (DE 865), and has repeatedly and intentionally revealed the work-product of other Plaintiffs' counsel to Chiquita and others. Movants – Plaintiffs in Nos. 08-80421, 08-80480, and 08-80508 – seek an order enforcing the Court's August 3 Order by restraining Mr. Wolf from further divulging any Plaintiffs' counsel communications to Chiquita or others, and compelling Mr. Wolf to pay his share of joint costs for depositions in Colombia. Additionally, Movants seek to impose sanctions for any further violations of confidentiality, and any other relief the Court finds appropriate to remedy or deter such violations.

In addition to his violation of the Court's August 3 Order, Mr. Wolf has repeatedly and intentionally provided third parties and opposing counsel with documents containing, and statements about, the work product of MDL Plaintiffs' counsel – including materials that this Court has specifically shielded from discovery. The imposition of sanctions is necessary to support the authority of the Court and for the functioning of the MDL.

## II.     STATEMENT OF FACTS

### <u>A.</u>  Mr. Wolf failed to abide by the Court's order concerning Amended Letters of Request, and made unauthorized disclosures to opposing counsel.

*1.  The Court's Orders concerning the Colombian depositions.*

In April, the Court issued Letters of Request for Judicial Assistance for the depositions of three former Colombian paramilitaries. DE 759. The Order issuing the letters stated in part, "to the extent an oral examination is allowed, the

1

procedural requests shall include a request for a single direct examination by a designated liaison counsel for plaintiffs' groups." DE 759 at 17.

After the depositions of Fredy Rendón Herrara and Jesús Roldán Perez were scheduled, Mr. Wolf indicated that he would not follow the procedure ordered by the Court. In an email to Plaintiffs' counsel and Chiquita, Mr. Wolf indicated, "We have the right to cross examine the witnesses and are adverse to Mr. Simons' group." Simons Decl. ¶ 33. Mr. Simons responded privately to Mr. Wolf, stating that "Plaintiffs' counsel have consensus that Judith Brown Chomsky and Marissa Vahlsing will take these two depositions on behalf of the plaintiffs," stating his hope that Mr. Wolf would cooperate in proposing questions, and asking if he would agree to cost-sharing. *Id.* ¶ 34. Mr. Wolf initially responded to Mr. Simons, stating in part, "We'll pay our own part of the court reporter costs[.]" *Id.* ¶ 35. Then, as he had done previously, Mr. Wolf forwarded Mr. Simons's email to Chiquita counsel John Hall, with a short message beginning, "John you should be in this conversation." *Id.* ¶ 36.

Defendants then moved to modify the Letters of Request. DE 855. Although Mr. Wolf joined Defendants' motion, he indicated in his filing that he was only interested in the Rendón deposition, and had no interest in Roldán: "We have no knowledge about Mr. Roldán and nothing to contribute to his deposition." DE 856 at 1 n.1. Plaintiffs' counsel responded in agreement with some of Chiquita's proposals, but also proposing to address the coordination and confidentiality issues among Plaintiffs' counsel. DE 860.

This Court adopted Plaintiffs' proposals. DE 865. Paragraph 2 of the Order is particularly relevant to the instant motion:

- First, the Court ordered Plaintiffs to "designate no more than one counsel per witness to conduct the examinations of each witness for which the Court has issued letters of request."

- Second, the Court ordered that, "In the event of a dispute among Plaintiffs . . . regarding the designation of counsel, the designation of the majority of counsel shall control.

- Third, the Court ordered all Plaintiffs' counsel to keep their discussions confidential: "Any discussions within Plaintiffs' counsel . . . regarding preparations for these examinations, or any other issues of joint coordination in this MDL proceeding, shall proceed under a mutual understanding of confidentiality except where  consent to disclose to other parties has been given or a court has ordered disclosure."

- Fourth, the Court ordered that "Counsel who wish to participate in the examinations shall share in the joint costs of the examinations."

*Id.* at 1-2. Mr. Simons emailed Mr. Wolf to bring the Court's Order to his attention and inquiring about his plans for participating in the Roldán deposition if Rendón was not also being deposed; Mr. Wolf did not respond or indicate that he would be sending any representatives. Simons Decl. ¶ 37.

      *2.  Mr. Wolf's participation in the Roldán deposition.*

      The deposition of Jesus Ignacio Roldán Perez was held on August 12 before a Colombian judge. (Rendón did not appear.) *Id.* at ¶ 38. A Colombian attorney named Alex Alberto Morales Córdoba appeared at the deposition, asserting that he was there as a representative of Paul Wolf and his clients. Simons

Decl. Ex. 1 (Transcript of Deposition of Jesus Ignacio Roldán) at 4:12-5:1. Mr.
Morales's participation was particularly surprising in light of Mr. Wolf's previous
assertion that he had "no knowledge about Mr. Roldán and nothing to contribute
to his deposition." DE 856 at 1 n.1.

As agreed to by the majority of Plaintiffs' counsel, Ms. Vahlsing
conducted the direct examination of Mr. Roldán. Ex. 1 (Roldán Tr.) at 22:22-
23:12. Although Ms. Vahlsing made it clear that she was the only authorized
representative of Plaintiffs' counsel, the Colombian judge allowed Mr. Morales to
pose questions and he did so. *Id.* at 18:20-19:8; 54:1-55:24.

Plaintiffs' counsel EarthRights International advanced the joint Plaintiffs'
costs of the deposition, namely the fees and travel expenses for the court reporter
and interpreter, and security arrangements necessary for all participants (and
insisted upon by the court reporter and interpreter). Those costs were as follows:

| | |
|---|---|
| Court Reporter: Fees and per diem for travel days | $3,472.50 |
| Court Reporter: Travel Miami -Medellin - Miami | $608.00 |
| Court Reporter: 4 nights hotel in Medellin | $202.46 |
| Interpreter: Fee for service | $489.05 |
| Interpreter: Travel Bogota-Medellin-Bogota | $131.76 |
| Interpreter: 1 night hotel in Medellin | $51.12 |
| Security: Bullet-proof car and escort | $1,001.73 |
| TOTAL: | $5,956.62 |

Simons Decl. ¶ 38.

3. *Mr. Wolf's refusal to abide by cost-sharing and confidentiality.*

On September 16, Mr. Simons emailed Mr. Wolf with an invoice for
$850.95, representing 1/7 of the joint expenses of the Roldán deposition, split
with other Plaintiffs' counsel. *Id.* ¶ 39. (All other Plaintiffs' counsel paid their
share. *Id.* ¶ 38.) Mr. Wolf emailed back refusing to pay his share, suggesting he
had not participated in the deposition, and copying in three attorneys for Chiquita

4

– including the original email from Mr. Simons. *Id.*

Because both emails should have been confidential under the terms of the
Court's August 3rd Order, Mr. Simons immediately emailed Chiquita's counsel
asking them to destroy and not view the emails. *Id.* ¶ 40 & Ex. 2. Counsel John
Hall responded by email that they would accommodate this, and copied Mr. Wolf.
*Id.* Mr. Wolf responded, "Marco, I have asked you repratedly(sic) not to send me
confidential communications  and that I will cc Chiquita in my replies." *Id.*

Mr. Simons then emailed Mr. Wolf to respond to his suggestion that he
had not participated in the deposition. The following exchange ensued:

> *Mr. Simons, email to Mr. Wolf:*
> Dear Paul,
> It is my understanding that you did participate in the deposition. Someone
> who identified himself as Alex Alberto Morales Córdoba appeared at the
> examination, stated "I am here representing Dr. Paul David Wolf," and
> asked questions. That examination, like the rest of the examination, relied
> on both the court reporter and the interpreters provided. Was Mr.
> Morales not affiliated with you?
>
> Sincerely,
> Marco
>
> *Mr. Wolf, again copying Chiquita's counsel:*
>
> If you expect me to reply I will copy all parties.
>
> *Mr. Simons, replying to Mr. Wolf and Chiquita's counsel:*
>
> I'm sure everyone would like to know if Mr. Morales is affiliated with you.
>
> *Mr. Wolf, replying to Mr. Simons and Chiquita's counsel:*
>
> Good. When you correspond woth [sic] me it is on the record and I will
> always cc all parties in my reply. If you do not like that you can ask
> Chiquita to delete them each time. I hired Alex Morales to attend the El
> Aleman depo, but he does not generally have power of representation.
> Alex told me you continued to try to exclude him but the judge allowed
> his attendence [sic] anyway. My understanding of your position is that you
> will not work with us without confidentiality. But I cant agree to that due
> to witness payment and other ethical issues.

*Id.* ¶ 41 & Ex. 3. Plaintiffs' counsel have made no further attempts to coordinate

with Mr. Wolf. *Id.* ¶ 42.

### B.  Mr. Wolf's pattern of disclosure of confidential work product communications.

Mr. Wolf's latest unauthorized disclosures, which violate the Court's

express order, may be the most urgent, because they impede Plaintiffs' ability to

continue with the paramilitary depositions. They are part of a pattern, however, of

unauthorized disclosures.

> *1.   It has long been necessary for MDL plaintiffs' counsel to engage in confidential coordination.*

Even before these cases were coordinated in the MDL, Plaintiffs' counsel

on the several Chiquita cases with a common interest in prosecuting their claims

and defending similar motions to dismiss, consulted with each other on a

confidential basis. Declaration of Marco Simons ("Simons Decl.") ¶ 2. For

example, Plaintiffs' counsel – including Paul Wolf – coordinated on their strategy

in an October 29, 2007, meeting with opposing counsel, led by Eric Holder, in

Washington, D.C. *Id.* ¶ 3. As Chiquita moved for coordination in multi-district

litigation, counsel had additional conversations over email and telephonically.

*Id.*¶¶ 4-6. All counsel understood that these conversations were privileged and

confidential. *Id.* ¶ 2.

Following the MDL order, coordination among Plaintiffs' counsel was no

longer optional, as joint briefs were filed and Plaintiffs had to present coordinated

positions at hearings. All plaintiffs' counsel had three conference calls in March

2008. *Id.* ¶ 7. Plaintiffs' counsel who were participating in the status conference

met to coordinate on the morning of the conference. *Id.* ¶ 8. The Court's first

Case Management Order effectively required Plaintiffs' counsel to continue confidential litigation strategy coordination, by requiring Plaintiffs to "file a joint opposition" to Chiquita's Motion to Dismiss. DE 67 at 6. Plaintiffs – again including Mr. Wolf – did so, and Plaintiffs' counsel further coordinated on presentation of oral argument on the motion. *Id.* ¶ 9.

Mr. Wolf continued to participate in joint communications and filings for years, seeking feedback on briefs specific to his cases, commenting on drafts of joint briefs, and requesting that they be filed on his behalf. *Id.* ¶ 10. At multiple points, one or more of plaintiffs' counsel expressly established that these discussions were protected by common interest, joint prosecution and/or work product privileges. *Id.* ¶ 11. Mr. Wolf himself asserted that his communications with other Plaintiffs' counsel were confidential. For example, in a January 13, 2010, email to all Plaintiffs' counsel, Mr. Wolf stated, "**Please treat these notes as confidential work product.**" *Id.* ¶ 12 (emphasis added).

After the Court ruled in June 2011 that many of Plaintiffs' claims would proceed, DE 412, Plaintiffs' counsel increased their coordination. Plaintiffs' counsel Marco Simons established an email list that included Mr. Wolf. *Id.* ¶ 13. Every message on the list included a footer that stated, "**This message is privileged and confidential attorney work product**." *Id.* Mr. Wolf never objected to this characterization, and sent dozens of messages to this list. *Id.* ¶ 14.

On June 22, 2011, Plaintiffs' counsel – including Mr. Wolf – met in Washington, D.C., to discuss next steps and proposals regarding case management. *Id.* ¶ 15. At or shortly after that meeting, Plaintiffs' counsel discussed two agreements. One would govern the confidentiality of individual

plaintiffs' identities ("Plaintiff Identity Agreement"), so that plaintiffs' counsel could share the confidential names of their clients with each other to determine whether any plaintiffs were represented in multiple cases. The other was a more general "Common Interest and Confidentiality" agreement. *Id.* ¶ 16. No one, including Mr. Wolf, objected to the notion that the discussions among Plaintiffs' counsel were confidential. *Id.* ¶ 15.

The terms of the Common Interest and Confidentiality agreement were incorporated into the Plaintiff Identity Agreement. Paragraph 2 of that agreement reads: "This agreement supplements and does not replace the COMMON INTEREST AND CONFIDENTIALITY AGREEMENT, **which is incorporated by reference herein**." *Id.* ¶ 17. (emphasis added). Mr. Wolf signed the Plaintiff Identity Agreement; a signed version of this agreement appears in the documents that Mr. Wolf produced to Chiquita. *Id.* Later, in an August 21, 2013, email, Mr. Wolf stated: "The only confidentiality agreement I have with the co-plaintiffs counsel in the Chiquita case is not to disclose the identities of any other lawyers' clients." *Id.* ¶ 28. Mr. Wolf, however, ignored the fact that this agreement incorporated the full Common Interest and Confidentiality Agreement.

Although the Common Interest and Confidentiality Agreement provided certain additional protections for the confidentiality of information shared with the group – for example, that parties to the agreement would inform others of any subpoenas and would not produce confidential information unless ordered to by a court, *id.* ¶ 18 – it was not the sole basis for the understanding that Plaintiffs' counsel's communications were confidential. As noted above, that had been established from the outset, and had never been questioned by anyone, including

8

Mr. Wolf.

       2.   *Mr. Wolf's conflicts with Plaintiffs' counsel and eventual exclusion from group communications.*

Early in the MDL litigation, it became apparent that a dispute had arisen between Mr. Wolf and Terry Collingsworth over their joint case. Both sought to be named by this Court as lead counsel for those plaintiffs or to the plaintiffs divided between them. *See, e.g.*, DE 76; DE 102; DE 114; DE 124-125; DE 130-131; DE 135-138; DE 144. Nonetheless, both continued to participate in coordinated discussions and filings.

In July 2012, Mr. Wolf exchanged emails with other plaintiffs' counsel regarding group decisions on litigation and case management strategy. Mr. Wolf expressly rejected the notion that he had agreed to any group decisions or decisionmaking structure. Simons Decl. ¶ 19. In response, counsel Jack Scarola stated, "Your express disclaimer of participation in the group's agreements requires that we terminate your access to our group communications." *Id.* ¶ 20. Nonetheless other Plaintiffs' counsel continued to coordinate with Mr. Wolf; he was invited to participate in a telephonic discussion of all Plaintiffs' counsel on September 21, 2012. *Id.* ¶ 22.

Mr. Simons – who maintains the MDL group email list – was on sabbatical did not see the July exchange until later. *Id.* ¶ 21. On October 4, 2012, Mr. Simons emailed the list stating in part, "I realized that I missed a discussion while I was out this summer suggesting that Paul Wolf should be removed from this list due to his failure to agree to group decisions." *Id.* ¶ 23. The following day, after discussion, Mr. Simons emailed the list again stating in part: "Since there seems to be consensus on this, I have removed Paul Wolf from this list." *Id.*

Even at this point, however, Plaintiffs' counsel had no indication that Mr. Wolf did not believe our discussions to be confidential, and continued to coordinate with him. In October 2012, Wolf included his cases in a joint notice of appeal filed to the Eleventh Circuit, and he consented to a joint Civil Appeals Statement and Certificate of Interested Parties filed with the Court of Appeals, among other joint filings. *Id.* ¶ 24.

On October 29, 2012, Mr. Wolf, in his own name and in the name of *Does 1-98*, sued the law firm Boies, Schiller & Flexner LLP alleging fraud and other torts. *See* DE 3 in No. 13-80146. Although they were not sued, Mr. Wolf mentioned the firm Searcy Denney Scarola Barnhart & Shipley, P.A., as possible co-conspirators. *Id.* ¶ 11.

> 3.  *Mr. Wolf's disclosures of MDL work product.*

On May 21, 2013, Mr. Simons emailed Mr. Wolf expressing the opinion that, despite Mr. Wolf's conflicts with other counsel, it would be strategically beneficial for all plaintiffs to submit joint briefs to the Eleventh Circuit. Simons Decl. ¶ 25. The same day, Mr. Wolf responded that he would be writing his own brief – **and copied Chiquita's counsel John Hall on his email**, including quotation of Mr. Simons's assessment of litigation strategy. Simons Decl. ¶ 26. Prior to this email, the other MDL counsel had no indication from Wolf that he did not consider himself bound by work product confidentiality. But at this point, Plaintiffs' counsel determined they could no longer even speak to Mr. Wolf about any matters of coordination. *Id.* ¶ 27.

Unknown to Plaintiffs' counsel at the time, this was not Mr. Wolf's only disclosure of MDL plaintiffs' work product. On August 21, 2013, Mr. Wolf

emailed Trey Wells, counsel to Drummond in *Doe v. Drummond*, another human rights lawsuit brought by Mr. Collingsworth. Mr. Wolf described confidential discussions among MDL Plaintiffs' counsel and attached a memorandum from Mr. Collingsworth's associate, Piper Hendricks. *Id.* ¶ 28. The subject of that memorandum (the "Hendricks Memorandum") was a legal analysis of the ethics and propriety of certain forms of support to a hypothetical fact witness; it contained no facts regarding actual or alleged payments to any witness, and mentioned no specific witnesses by name. *Id.* ¶ 29. The Court specifically ruled that this document, produced by Mr. Wolf to Chiquita, should be withheld based on Plaintiffs' claim of work product protection. *See* DE 809 (Plaintiffs' privilege log for Wolf's production, including this memo as Document No. 14); DE 872 at 6 (order sustaining work product objections as to all but Document No. 26).

     Although, as noted above, Mr. Wolf agreed to the Plaintiff Identity Agreement, he told Mr. Wells that he had no other obligations of confidentiality, Simons Decl. ¶ 28 – despite the fact that as noted above, Mr. Wolf specifically asserted that his own notes were "confidential work product" when shared with other Plaintiffs' counsel, and sent numerous emails to the MDL email list with the footer indicating they were "privileged and confidential attorney work product."

     Without notice to the other MDL counsel, on July 1, 2014, Wolf again revealed confidential information, this time in a "confidential deposition" in the *Drummond* case. *Id.* ¶ 30. In that deposition he discussed, inter alia, the content of meetings of the MDL plaintiffs' attorneys. *Id.* Again, this Court ordered that the deposition not be produced to Chiquita. DE 872 at 6.

     When MDL Plaintiffs' counsel became aware of these disclosures, they

contacted Mr. Wolf. On January 9, 2015, Mr. Simons sent a letter to Mr. Wolf on behalf of Plaintiffs' counsel, asking that Mr. Wolf "confirm your agreement regarding the privileged and confidential nature of communications between and among counsel, and to demand that you cease and desist any activity inconsistent with this understanding." Simons Decl. ¶ 31. Mr. Wolf's only response was to say, "letter received." *Id.* ¶ 32.

## III.    ARGUMENT

### A. Mr. Wolf repeatedly violated multiple elements of this Court's Order.

Paragraph two of this Court's Order of August 3, 2015, ordered that: (1) Plaintiffs will designate no more than one attorney to conduct an examination of each witness; (2) in case of a disagreement over the identity of the examiner, the choice of the majority would control; (3) any discussions regarding preparations for the examinations or "other issues of joint coordination in the MDL shall proceed with an understanding of mutual confidentiality;" and (4) counsel who wish to participate in the examinations shall share in the joint costs of the examination. DE 865 at 1-2.

Paul Wolf violated each of the above aspects of the Order. He violated (1) and (2) when he disregarded Plaintiffs' consensus choice for examining counsel and separately sent a representative to conduct an examination. He violated (3) when he copied emails from Mr. Simons in multiple emails to Chiquita's counsel on September 16, 2015, and in those emails he also announced his intention to never comply with this confidentiality requirement in the future. He violated (4) when he refused to pay his share of deposition costs despite the participation of his agent in the proceeding.

These violations are both ongoing and persistent, because Mr. Wolf still has not paid his share and has never rescinded his threat to forward all communications from Plaintiffs' counsel to Chiquita. Moreover, Mr. Wolf sent a representative to the Roldán deposition despite indicating little interest in that witness, and has indicated that he **is** interested in the Rendón deposition – suggesting that he is likely to try the same tactic in that deposition.

This is more than sufficient to justify an order requiring compliance.

**B. Mr. Wolf's disclosure of MDL Plaintiffs' work product violated his own agreement, the ethical obligation of confidentiality and his obligation to cooperate in the court-mandated MDL.**

Even before the Court's August 3rd Order, Mr. Wolf was obligated to keep confidential all communications among the MDL plaintiffs' counsel. As noted above, Mr. Wolf expressly agreed to the Plaintiff Identity Agreement, which incorporated the more general Common Interest and Confidentiality Agreement. Mr. Wolf himself claimed work product confidentiality over materials shared with other Plaintiffs' counsel, and participated for over a year in an email list where every message bore the stamp of confidential work product.

Perhaps most importantly, the ability to share information with certainty that it will remain confidential among the parties to an MDL is essential to the success of the MDL process. "If there is a single critical component to counsel coordination, it is the sharing of information. Lawyers share factual information, legal research, and litigation strategies." Erichson, Howard M., "Informal Aggregation: Procedural and Ethical Implications of Coordination Among Counsel in Related Lawsuits," 50 Duke L.J. 381, 419 (November 2000). Work product confidentiality assures coordinating counsel that their work and strategies

will not be accessed by the adversaries. *Perez v. Clearwater Paper Co.,* No. 13-cv-00461, 2015 WL 685331, *2 (D. Idaho. Feb. 17, 2015); *see also Castel v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1466-67 (11th Cir. 1984); *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980); *United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21, 25 (D.D.C. 2002); *Mitsui Sumitomo Ins. Co. v. Carbel, LLC,* No. 09-21208-CIV, 2011 WL 2682958, *4-5 (S.D. Fla. July 11, 2011).

"[T]he privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all of the parties." *United States v. BDO Seidman, LLP,* 492 F.3d 806, 817 (7th Cir. 2007); *see also In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129,* 902 F.2d 244, 250 (4th Cir. 1990); *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers,* 913 F.2d 544, 556 (8th Cir. 1990); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 29 (N.D. Ill. 1980); Restatement (Third) of the Law Governing Lawyers § 76, cmt. g. (2000). Because Mr. Wolf was not authorized by all other counsel to share communications among the MDL plaintiffs' counsel with third parties, his distribution of their confidential work product was unethical and significantly disrupted the coordination that the MDL process put in place.

The fact that Wolf announced at some point his intention to reveal confidential communications does not excuse his doing so. His unilateral action did not waive confidentiality. *Ohio-Sealy Mattress Mfg. Co.,* 90 F.R.D. at 29. Indeed, no counsel was on notice of Mr. Wolf's intent to reveal confidential communications until May 21, 2013, after Mr. Wolf had already been privy to hundreds of confidential litigation strategy communications and assorted drafts and memoranda. Indeed, the work product memorandum that he later shared

with Drummond's counsel was circulated in 2011, long before Mr. Wolf indicated that he would not observe confidentiality.

Even if Mr. Wolf were not bound by the Common Interest and Confidentiality Agreement, or any unwritten agreements, the common interest privilege will apply even in the absence of any formal agreement, written or otherwise.[1] *See In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir. 1996) (applying the common interest privilege despite the lack of any explicit agreement); Restatement (Third) of the Law Governing Lawyers § 126 cmt. c (Proposed Final Draft No. 1, 1996) ("Exchanging communications may be predicated on an express agreement, but formality is not required.").

Moreover, even if the technical requirements of the common interest privilege were not met here, the material circulated remains attorney work product whose protection has not been waived. Work product protection is not waived simply because the materials are shared with persons other than attorneys representing the same client. "[D]isclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." 8 Wright & Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2008). "Unlike the attorney-client privilege, 'the work-product privilege is not necessarily waived by disclosure to any third party'; rather, 'the courts generally find a waiver of the work product

---

[1] "While a well-drafted joint defense agreement makes it simple for the courts to determine whether the parties intended to participate in a joint defense, an executed agreement is not a necessary ingredient to a common interest privilege claim." *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 217 (Tenn. Ct. App. 2002) (citing *Power Mosfet Techs. v. Siemens A.G.*, 206 F.R.D. 422, 425 (E.D. Tex. 2000)).

15

privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Peacock v. Merrill,* No. CA 05-0377-BH-C, 2008 WL 762103, *4 (S.D. Ala. Mar. 19, 2008) (collecting cases); *see also Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1428 (3d Cir. 1991). In hindsight, of course, Plaintiffs' trust in Mr. Wolf was misplaced. Nonetheless, Plaintiffs' counsel had no reason to believe that, by sharing their work product with other plaintiffs' attorneys in the same MDL, they would substantially increase the likelihood of disclosure of this information. The material remains protected work product and Mr. Wolf's disclosures remain unauthorized and improper.

Mr. Wolf's misconduct has made it impossible to coordinate with him and quite difficult to comply with the Court's orders. Plaintiffs' counsel cannot even propose any kind of joint strategy to Mr. Wolf without it being shared with Chiquita, which undermines the efficiencies for which the MDL procedure is designed. Two more paramilitary depositions are coming up soon, and Mr. Wolf's behavior must be addressed before they proceed.

The fact that – *after* he was removed from communications with other counsel – Mr. Wolf filed an action against Boies Schiller does not relieve him of the obligation to keep his *prior* communications with MDL Plaintiffs' counsel confidential, or subsequent coordinating communications among counsel who are not parties to the fraud action.

### C. The Court has authority to enforce its orders and police those appearing before it.

This Court has "inherent . . . authority to enforce its orders." *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985); *Jones v. Graham,* 709 F.2d 1457, 1458 (11th Cir. 1983)). Courts also "have the inherent power to police those appearing

before them." *Sciarretta v. Lincoln Nat. Life Ins. Co.,* 778 F.3d 1205, 1212 (11th Cir. 2015).

Mr. Wolf's conduct as described above both violates the Court's order and violates his duties as an attorney to maintain the confidentiality of work product. The Court has the power to stop these violations, and should do so to protect the MDL process and Plaintiffs' ability to engage in confidential coordination on litigation strategy, as well as to cooperate in sharing of discovery costs and avoiding chaos.

The Court also has inherent authority to sanction litigants for their conduct, *see Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002), and sanctions may be warranted if the Court concludes that Mr. Wolf acted in bad faith. *In re Walker,* 532 F.3d 1304, 1309 (11th Cir. 2008). The record here shows that Mr. Wolf's divulging of confidential information was not done innocently, because Mr. Wolf had previously accepted confidentiality obligations and knew that other counsel believed their communications with him to be confidential. The Court may therefore consider appropriate measures to remedy such conduct and prevent it in the future.

## IV.   CONCLUSION AND REMEDIES SOUGHT

For the foregoing reasons, Plaintiffs respectfully seek that the Court order Paul Wolf to:

1. Certify in writing that he will not divulge any communication from any Plaintiffs' counsel, relating to this MDL, to any other party without express authorization or an order of the Court;

2. Promptly notify Plaintiffs' counsel of any attempt to subpoena or

otherwise obtain their communications relating to this MDL, give

Plaintiffs' counsel an opportunity to quash any subpoena or otherwise

respond before producing such communications, and only producing

communications required by court order;

3.   Promptly reimburse EarthRights International for $850.95, with interest

accruing from the date of entry at the post-judgment interest rate;

4.   Comply with the Court's order of August 3, 2015 (DE 865), requiring that

Plaintiffs' counsel agree by majority on a single counsel who will ask

questions in the depositions ordered;

5.   Pay sanctions in an appropriate amount for any further violations of the

Court's orders.

Furthermore, Plaintiffs respectfully request that the Court consider the

appropriateness of sanctions to reimburse Plaintiffs' counsel for the time spent

preparing this Motion and to remedy the harm from prior unauthorized

disclosures of confidential work product.

## V.   STATEMENT PURSUANT TO LOCAL RULE 7.1(a)(3)

Counsel certifies that a draft of this Motion was sent to Paul Wolf on

December 22, 2015, who indicated his opposition to the relief sought.


Dated: December 22, 2015                    Respectfully submitted,

                                            /s/ Marco Simons
                                            Marco Simons
                                            Richard Herz
                                            **EarthRights International**
                                            1612 K Street N.W., Suite 401
                                            Washington, D.C. 20006
                                            Tel: 202-466-5188
                                            Fax: 202-466-5189

John de Leon, FL Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez & De Leon, P.A.**
1399 SW 1st Avenue, #202
Miami, FL 33120
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Paul L. Hoffman
**Schonbrun, Desimone, Seplow, Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-365-7260

***Counsel for John Doe I et al., Case No. 08-80421-CIV-MARRA***

James K. Green, FL Bar No.

19

229466
**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
William B. King, FL Bar No.
181773
**Searcy Denney Scarola Barnhart
& Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

*Counsel for Jose and Josefa
Lopez Nos. 1 through 342, Case
No. 08-80508-CIV-MARRA*

Jonathan C. Reiter
**Law Firm of Jonathan C. Reiter**
350 Fifth Avenue, Suite 2811
New York, NY 10118
Tel: 212-736-0979
Fax: 212-268-5297

Ronald S. Guralnick, FL Bar No.
111476
**Ronald Guralnick, P.A.**
Bank of America Tower at
International Place
100 S.E. 2d Street, Suite 3300
Miami, FL 33131
Tel: 305-373-0066
Fax: 305-373-1387

*Counsel for Plaintiffs
Juan/Juana Does 1-888, Case
No. 08-80480-CIV-MARRA*